SWIFT (CARTER v.). See Case No. 2,479.

## Case No. 13,696.

### SWIFT et al. v. GIFFORD.

[2 Lowell, 110.] [1]

District Court, D. Massachusetts. March, 1872.

FISHERIES—FIRST TO IRON WHALE—USAGE.

1. Where a boat's crew from whale-ship A. pursued and struck a whale in the Arctic Ocean, and the harpoon, with the line attached to it, remained in the whale, but did not remain fast to the boat, and a boat's crew from ship B. continued the pursuit and captured the whale, and the master of ship A. claimed it on the spot, *held*, that an admitted usage that the whale should belong to ship A. under such circumstances was a valid usage.

2. A like decision was made by Judge Sprague in a case not reported.

[See Case No. 1,698.]

[Cited in Ghen v. Rich, 8 Fed. 161.]

Libel by [W. C. N. Swift and others] the owners of the ship Hercules against the agent and managing owner of the Rainbow, both whale-ships of New Bedford, for the value of a whale killed in the Okhotsk Sea by the boats of the Hercules, and claimed by the master of the Rainbow, and taken and appropriated by him, because one of his harpoons, with a line attached to it, was found fastened in the animal when he was killed. The evidence tended to show that the boats of the respondents raised and made fast to the whale, but he escaped, dragging the iron and line, and so far outran his pursuers that the boats' crews of the Hercules did not know that any one had attacked or was pursuing the whale when they, being to windward, met and captured him; that the master of the Rainbow was, in fact, pursuing, and came up before the whale had rolled over, and said that one of his irons would be found in it, which proved to be true; and he thereupon took the prize. The parties filed a written stipulation that witnesses of competent experience would testify, that, during the whole time of memory of the oldest masters of whaling-ships, the usage had been uniform in the whale-fishery of Nantucket and New Bedford that a whale belonged to the vessel whose iron first remained in it, provided claim was made before cutting in. There were witnesses on the stand who confirmed the existence of the usage, and who extended it to all whalemen in these seas; and there was nothing offered to oppose this testimony. The only disputed question of fact or opinion was concerning the reasonable probability that the whale would have been captured by the Rainbow, if the boats of the Hercules had not come up. The value of the whale was said to be about $3,000.

J. C. Dodge and C. T. Bonney, for libellants.

1. The rule of law is, that wild animals become property only when fully and actu-

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

ally taken into possession. 2 Kent. Comm. 239; Pierson v. Post, 3 Caines, 175; Buster v. Newkirk, 20 Johns. 75; 2 Bl. Comm. 389–394.

2. The admitted custom, being in contravention of this rule of law, is void. Dickinson v. Gay, 7 Allen, 29; Copeland v. Richardson, 6 Gray, 536; Brown v. Jackson [Case No. 2,016]; Thompson v. Riggs. 5 Wall. [72 U. S.] 663; Nudd v. Hobbs, 17 N. H. 524; Constable v. Nickerson, 14 C. B. (N. S.) 230; Dood v. Farlow, 11 Allen, 429; Reed v. Richardson, 98 Mass. 216; Leach v. Perkins, 17 Me. 465; Hone v. Mutual Safety Ins. Co., 1 Sandf. 149.

3. The usage is not universal. See the reported cases in England. Addison v. Row, 3 Pat. App. 334; Hogarth v. Jackson, 2 Car. & P. 595; Aberdeen Arctic Co. v. Sutter, 4 Macq. 355; Fennings v. Lord Grenville, 1 Taunt. 241; Littledale v. Scaith, Id. 243, note.

4. The custom is unreasonable.

5. We ought to have salvage, at least.

G. Marston and W. W. Crapo, for respondent.

The admitted usage is valid. The several English and Scotch cases cited by the libellants recognize and uphold a usage not precisely like this, but equally derogatory or the general rule of law. The very same usage is referred to by Sprague, J., in Taber v. Jenny [Case No. 13,720], with apparent approbation, and in Bourne v. Ashley [Id. 1,698], decided by the same learned judge, but not reported, the usage was recognized and applied.

LOWELL, District Judge. The rule of the common law, borrowed probably from the Roman law, is, that the property in a wild animal is not acquired by wounding him, but that nothing short of actual and complete possession will avail. This is recognized in all the cases concerning whales cited at the bar, as well as in the authorities given under the first point. Whether the modern civil law has introduced the modification that a fresh pursuit with reasonable prospect of success shall give title to the pursuer, does not seem to be wholly free from doubt, though the ancient commentators rejected such a distinction, for the satisfactory reason that it would only introduce uncertainty and confusion into a rule that ought to be clear and unmistakable. See 16 Poth. Pandects, p. 550, lib. 41, tit. 1; Gaius, by Tompkins & Lemon, p. 270. I do not follow up this inquiry; because it would be impossible for me to say that the crew represented by the respondent, though continuing the chase, had more than a possibility of success.

The decision, therefore, must turn on the validity of the usage, without regard to the chances of success which the respondent's crew had when the others came up. It is not disputed that the whalemen of this state, who have for many years past formed, I suppose, a very large proportion of all those who follow this dangerous trade in the Arctic seas, and perhaps all other Americans, have for a very long time recognized a custom by which the iron holds the whale, as they express it. The converse of the proposition is that a whale which is found adrift, though with an iron in it, belongs to the finder, if it can be cut in before demand made. The usage of the English and Scotch whalemen in the Northern fishery, as shown by the cases, is, that the iron holds the whale only while the line remains fast to the boat; and the result is, that every loose whale, dead or alive, belongs to the finder or taker, if there be but one such.

The validity of the usage is denied by the libellants, as overturning a plain and well-settled rule of property. The cases cited in the argument prove a growing disposition on the part of the courts to reject local usages when they tend to control or vary an explicit contract or a fixed rule of law. Thus Story, J., in The Reeside [Case No. 11,657], says, "I own myself no friend to the almost indiscriminate habit of late years of setting up particular usages or customs in almost all kinds of business and trade, to control, vary, or annul the general liabilities of parties under the common law, as well as the commercial law. It has long appeared to me that there is no small danger in admitting such loose and inconclusive usages and customs, often unknown to particular parties, and liable to great misunderstandings and misinterpretations and abuses, to outweigh the well-known and well-settled principles of law." Many similar remarks of eminent judges might be cited. But in the application of these general views it will be found difficult to ascertain what is considered a principle of law that cannot be interfered with. Principles of law differ in their importance as well as in their origin; and while some of them represent great rules of policy, and are beyond the reach of convention, others may be changed by parties who choose to contract upon a different footing; and some of them may be varied by usage, which, if general and long established, is equivalent to a contract. Thus in Wigglesworth v. Dallison, 1 Doug. 201, which Mr. Smith has selected as a leading case, the law gave the crops of an outgoing tenant to his landlord; but the custom which made them the property of the tenant was held to be valid.

The rule of law invoked in this case is one of very limited application. The whale fishery is the only branch of industry of any importance in which it is likely to be much used; and if a usage is found to prevail generally in that business, it will not be open to the objection that it is likely to disturb the general understanding of mankind by

the interposition of an arbitrary exception. Then the application of the rule of law itself is very difficult, and the necessity for greater precision is apparent. Suppose two or three boats from different ships make fast to a whale, how is it to be decided which was the first to kill it? Every judge who has dealt with this subject has felt the importance of upholding all reasonable usages of the fishermen, in order to prevent dangerous quarrels in the division of their spoils. In Fennings v. Lord Grenville, 1 Taunt. 241, evidence was offered of a custom in the Southern fishery for the contending ships to divide the whale equally between them. This custom, which differed entirely from that prevailing in the North Atlantic, was yet thought to be not unreasonable. Chambre, J., said, "I remember the first case on the usage which was had before Lord Mansfield, who was clear that every person was bound by it, and who said, that were it not for such a custom there would be a sort of warfare perpetually subsisting between the adventurers." The case went off upon a question of pleading, and the custom was not passed upon, but it is clear that it was thought to be valid. In the other cases cited, the usage first above mentioned was found to be valid. In the case of Bartlett v. Budd [Case No. 1,075], the respondents claimed title to a whale by reason of having found it, though it had been not only killed, but carefully anchored, by the libellants. I there intimated a doubt of the reasonableness of a usage in favor of the larceny of a whale under such circumstances. And I still think that some parts of the asserted usage could hardly be maintained. If it were proved that one vessel had become fully possessed of a whale, and had afterwards lost or left it, with a reasonable hope of recovery, it would seem unreasonable that the finder should acquire the title merely because he is able to cut in the animal before it is reclaimed. And, on the other hand, it would be difficult to admit that the mere presence of an iron should be full evidence of property, no matter when or under what circumstances it may have been affixed. But the usage being divisible in its nature, it seems to me, that, so far as it relates to the conduct of the men of different vessels in actual pursuit of a whale, and prescribes that he who first strikes it so effectually that the iron remains fast should have the better right, the pursuit still continuing, it is reasonable, though merely conventional, and ought to be upheld. In Bourne v. Ashley [supra], determined in June, 1863, but not printed, Judge Sprague, whose experience in this class of cases was very great, found the custom to be established, and decided the cause in favor of the libellants, because they owned the first iron, though the whale was killed by the crew of the other vessel, or by those of both together. Mr. Stetson, of

counsel in that case, has kindly furnished me with a note of the opinion taken down by him at the time, and I have carefully compared it with the pleadings and depositions on file, and am satisfied that the precise point was in judgment. The learned judge is reported to have said that the usage for the first iron, whether attached to the boat or not, to hold the whale, was fully established, and that one witness carried it back to the year 1800. He added, that, although local usages of a particular port ought not to be allowed to set aside the general maritime law, this objection did not apply to a custom which embraced an entire business, and had been concurred in for a long time by every one engaged in that trade.

In this case the parties all understood the custom, and the libellants' master yielded the whale in conformity to it. If the pursuit of the Rainbow had been clearly understood in the beginning, no doubt the other vessel would not have taken the trouble to join in it, and the usage would have had its appropriate and beneficial effect. In the actual circumstances, it is a hard case for the libellants; but as they have not sustained their title, I must dismiss their cause, and, in consideration of the point being an old one in this court, with costs.

Libel dismissed, with costs.