## GHEN *v.* RICH.

*(District Court, D. Massachusetts.* April 23, 1881.)

1. USAGE—FIN-BACK WHALE FISHERY.

   In the early spring months the easterly part of Massachusetts bay is frequented by fin-back whale. Fishermen from Provincetown pursue them in open boats from the shore, and shoot them with bomb-lances fired from guns made expressly for the purpose. When killed they sink at once to the bottom, but in the course of from one to three days they rise and float on the surface. The person who happens to find them on the beach usually sends word to Provincetown, and he receives a small salvage for his services. The business is of considerable extent, but is engaged in by but few people. Each boat's crew engaged in the business has its peculiar mark or device on its lances, and thus it is known by whom a whale is killed. The usage on Cape Cod, for many years, has been that the person who kills a whale, in the manner and under the circumstances described, owns it. *Held,* that the usage is reasonable and valid.

2. ANIMALS FERÆ NATURÆ—APPROPRIATION—TITLE.

   *Quære,* whether the first taker of an animal *feræ naturæ,* who performs the only act of appropriation that is possible in the nature of the case, does not thereby acquire title to it.

3. SAME—SAME.

   On the morning of April 9, 1880, in Massachusetts bay, near the end of Cape Cod, the libellant shot and instantly killed, with a bomb-lance, the whale in question. It sunk at once, and on the morning of the 12th was found stranded on the beach in Brewster, within the ebb and flow of the tide, by one Ellis, 17 miles from the spot where it was killed, who advertised it for sale at auction, and sold it to the respondent, who shipped off the blubber and tried out the oil. On the morning of the 15th, the libellant heard that the whale had been found, and at once sent his men to claim it. Neither the respondent nor Ellis knew that the whale had been killed by the libellant, but they knew, or might have known if they had wished, that it had been shot and killed with a bomb-lance, by some person engaged in this species of business. *Held,* that the respondent was liable for a conversion.

4. DAMAGES—RULE OF.

   The rule of damages in such a case is the market value of the oil obtained from it, less the cost of trying it out and preparing it for the market. with interest on the amount so ascertained from the date of conversion.

*H. M. Knowlton,* for libellant.

*H. P. Harriman,* for respondent.

NELSON, D. J. This is a libel to recover the value of a fin-back whale. The libellant lives in Provincetown and the respondent in Wellfleet. The facts, as they appeared at the hearing, are as follows:

In the early spring months the easterly part of Massachusetts bay is frequented by the species of whale known as the fin-back whale. Fishermen from Provincetown pursue them in open boats from the shore, and shoot them with bomb-lances fired from guns made expressly for the purpose. When killed they sink at once to the bottom, but in the course of from one to three days they rise and float on the surface. Some of them are picked up by ves-

sels and towed into Provincetown. Some float ashore at high water and are left stranded on the beach as the tide recedes. Others float out to sea and are never recovered. The person who happens to find them on the beach usually sends word to Provincetown, and the owner comes to the spot and removes the blubber. The finder usually receives a small salvage for his services. Try-works are established in Provincetown for trying out the oil. The business is of considerable extent, but, since it requires skill and experience, as well as some outlay of capital, and is attended with great exposure and hardship, few persons engage in it. The average yield of oil is about 20 barrels to a whale. It swims with great swiftness, and for that reason cannot be taken by the harpoon and line. Each boat's crew engaged in the business has its peculiar mark or device on its lances, and in this way it is known by whom a whale is killed.

The usage on Cape Cod, for many years, has been that the person who kills a whale in the manner and under the circumstances described, owns it, and this right has never been disputed until this case. The libellant has been engaged in this business for ten years past. On the morning of April 9, 1880, in Massachusetts bay, near the end of Cape Cod, he shot and instantly killed with a bomb-lance the whale in question. It sunk immediately, and on the morning of the 12th was found stranded on the beach in Brewster, within the ebb and flow of the tide, by one Ellis, 17 miles from the spot where it was killed. Instead of sending word to Princeton, as is customary, Ellis advertised the whale for sale at auction, and sold it to the respondent, who shipped off the blubber and tried out the oil. The libellant heard of the finding of the whale on the morning of the 15th, and immediately sent one of his boat's crew to the place and claimed it. Neither the respondent nor Ellis knew the whale had been killed by the libellant, but they knew or might have known, if they had wished, that it had been shot and killed with a bomb-lance, by some person engaged in this species of business.

The libellant claims title to the whale under this usage. The respondent insists that this usage is invalid. It was decided by Judge Sprague, in *Taber* v. *Jenny*, 1 Sprague, 315, that when a whale has been killed, and is anchored and left with marks of appropriation, it is the property of the captors; and if it is afterwards found, still anchored, by another ship, there is no usage or principle of law by which the property of the original captors is diverted, even though the whale may have dragged from its anchorage. The learned judge says:

"When the whale had been killed and taken possession of by the boat of the Hillman, (the first taker,) it became the property of the owners of that ship, and all was done which was then practicable in order to secure it. They left it anchored, with unequivocal marks of appropriation."

In *Bartlett* v. *Budd*, 1 Low. 223, the facts were these: The first officer of the libellant's ship killed a whale in the Okhotsk sea, anchored it, attached a waif to the body, and then left it and went ashore at

some distance for the night. The next morning the boats of the respondent's ship found the whale adrift, the anchor not holding, the cable coiled round the body, and no waif or irons attached to it. Judge Lowell held that, as the libellants had killed and taken actual possession of the whale, the ownership vested in them. In his opinion the learned judge says:

"A whale, being *feræ naturæ*, does not become property until a firm possession has been established by the taker. But when such possession has become firm and complete, the right of property is clear, and has all the characteristics of property."

He doubted whether a usage set up but not proved by the respondents, that a whale found adrift in the ocean is the property of the finder, unless the first taker should appear and claim it before it is cut in, would be valid, and remarked that "there would be great difficulty in upholding a custom that should take the property of A. and give it to B., under so very short and uncertain a substitute for the statute of limitations, and one so open to fraud and deceit." Both the cases cited were decided without reference to usage, upon the ground that the property had been acquired by the first taker by actual possession and appropriation.

In *Swift* v. *Gifford*, 2 Low. 110, Judge Lowell decided that a custom among whalemen in the Arctic seas, that the iron holds the whale, was reasonable and valid. In that case a boat's crew from the respondent's ship pursued and struck a whale in the Arctic ocean, and the harpoon and the line attached to it remained in the whale, but did not remain fast to the boat. A boat's crew from the libellant's ship continued the pursuit and captured the whale, and the master of the respondent's ship claimed it on the spot. It was held by the learned judge that the whale belonged to the respondents. It was said by Judge Sprague, in *Bourne* v. *Ashley*, an unprinted case referred to by Judge Lowell in *Swift* v. *Gifford*, that the usage for the first iron, whether attached to the boat or not, to hold the whale was fully established; and he added that, although local usages of a particular port ought not to be allowed to set aside the general maritime law, this objection did not apply to a custom which embraced an entire business, and had been concurred in for a long time by every one engaged in the trade.

In *Swift* v. *Gifford*, Judge Lowell also said:

"The rule of law invoked in this case is one of very limited application. The whale fishery is the only branch of industry of any importance in which

it is likely to be much used, and if a usage is found to prevail generally in that business, it will not be open to the objection that it is likely to disturb the general understanding of mankind by the interposition of an arbitrary exception."

I see no reason why the usage proved in this case is not as reasonable as that sustained in the cases cited. Its application must necessarily be extremely limited, and can affect but a few persons. It has been recognized and acquiesced in for many years. It requires in the first taker the only act of appropriation that is possible in the nature of the case. Unless it is sustained, this branch of industry must necessarily cease, for no person would engage in it if the fruits of his labor could be appropriated by any chance finder. It gives reasonable salvage for securing or reporting the property. That the rule works well in practice is shown by the extent of the industry which has grown up under it, and the general acquiescence of a whole community interested to dispute it. It is by no means clear that without regard to usage the common law would not reach the same result. That seems to be the effect of the decisions in *Taber* v. *Jenny* and *Bartlett* v. *Budd*. If the fisherman does all that it is possible to do to make the animal his own, that would seem to be sufficient. Such a rule might well be applied in the interest of trade, there being no usage or custom to the contrary. Holmes, Com. Law, 217. But be that as it may, I hold the usage to be valid, and that the property in the whale was in the libellant.

The rule of damages is the market value of the oil obtained from the whale, less the cost of trying it out and preparing it for the market, with interest on the amount so ascertained from the date of conversion. As the question is new and important, and the suit is contested on both sides, more for the purpose of having it settled than for the amount involved, I shall give no costs.

Decree for libellant for $71.05, without costs.