THE NEW ENGLAND BOX COMPANY *vs.* C & R CONSTRUC-
TION COMPANY.

Franklin.    March 1, 1943. — May 3, 1943.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*Public Officer.    Public Record.    Metropolitan District Water Supply Com-
mission.    Contract,* Modification, With Commonwealth.    *Common-
wealth,* Contracts.    *Personal Property,* Possession, Timber.    *Negligence,*
Trespasser, Toward one having possession of property.    *Evidence,*
Of action by public board, Relevancy and materiality.    *Words,* "Pub-
lic record," "Possession."

Formal action by the metropolitan district water supply commission
was necessary to effectuate a modification of a provision of a contract,
made by the Commonwealth through the commission in compliance
with § 60A, added to G. L. (Ter. Ed.) c. 92 by St. 1937, c. 352, § 1,
stating the extent of the period during which lumber might remain on
premises of the Commonwealth without its title reverting to the
Commonwealth.

Action by the metropolitan district water supply commission at a meeting
of all the members, modifying a contract made by the Commonwealth
through the commission in compliance with G. L. (Ter. Ed.) c. 92,
§ 60A, added by St. 1937, c. 352, § 1, was a "proceeding" of the com-
mission which was required to be entered in its records under G. L.
(Ter. Ed.) c. 66, § 6, and could be proved only by a record so made.

Evidence would have warranted a finding that one, who had purchased
lumber cut under the provisions of a contract made by the Common-
wealth through the metropolitan district water supply commission
and had permitted it to remain on land of the Commonwealth after a
date when by the contract's provisions title to the lumber, because so
remaining, had reverted to the Commonwealth and for about eight
months after that date had sold some of the lumber and otherwise had
exercised acts of dominion over it with which the commission, making
no effort to take possession of the lumber, had not interfered, was so
far in possession of the lumber that, though a trespasser on the land
of the Commonwealth, he might maintain an action against a third
person who had no rights there and whose negligence caused destruc-
tion of the lumber by fire.

Upon the issue, whether a purchaser of lumber, the title to which after a
certain date had reverted to the Commonwealth under a contract
made through the metropolitan district water supply commission, had
possession of the lumber entitling him to maintain an action against a

third person whose negligence caused its destruction by fire, evidence of what the Commonwealth, acting through its authorized representatives, did or did not do by way of taking actual possession of the lumber after the date of reverter, was competent.

TORT. Writ in the Superior Court dated March 4, 1940.

The case was tried before *Donahue*, J., who ordered a verdict for the defendant and reported the case to this court as stated in the opinion.

*G. B. Rowell*, (*T. A. Scriven* with him,) for the plaintiff.

*G. A. McLaughlin*, (*E. A. Counihan, Jr.*, with him,) for the defendant.

Cox, J. The defendant in this case is the same as in *Hanifin* v. *C & R Construction Co.*, ante, 651. The same contract between the defendant and the Commonwealth that is referred to in that case is here involved. Lumber, in each case, was destroyed by a separate fire. All the lumber that was destroyed was purchased as standing timber by several bills of sale from the Commonwealth, acting through the metropolitan district water supply commission, hereinafter referred to as the commission, by Hanifin, who sold to the plaintiff here, the lumber cut under one of these bills of sale. The questions of law, however, that are here involved are very different from those in the *Hanifin* case.

The contract between Hanifin and the Commonwealth provided that all standing wood and timber, at the Quabbin reservoir, on the area therein described was to be cut and removed from "said area" on or before July 15, 1938, and that any and all "cut wood and timber remaining on said area" after that date "shall be deemed abandoned and become the property of the Commonwealth. All cut timber and hardwood is to be stacked upon such area as may be designated by the Commission and where it will not interfere with any operation of the Commission, and to be removed therefrom on or before December 1, 1938, and any and all cut wood and lumber remaining on said premises after that date shall be deemed abandoned and become the property of the Commonwealth." All of the lumber referred to in Hanifin's contract with the Commonwealth had been cut on or before July 15, 1938, and piled above the

"flow line," so called, at a place designated by an agent of the commission, where it remained until destroyed by fire on July 26, 1939, except such as had been removed by the plaintiff. The defendant's contract with the Commonwealth, dated October 25, 1938, required it to clear certain specified areas at the Quabbin reservoir, including the burning of slash and other débris. In this contract the "flow line" is designated. The record in the case at bar discloses merely that the lumber was destroyed by fire. The circumstances in which the fire occurred do not appear. It is apparent that the lumber that was destroyed by fire on July 26, 1939, had not been removed from the place where it was stored on or before December 1, 1938, the date after which "all cut wood and lumber remaining on said premises . . . shall be deemed abandoned and become the property of the Commonwealth."

The plaintiff's action is in tort to recover damages for the destruction of the lumber, and at the trial before the jury it seems to have been conceded that an extension of time for the removal of lumber from above the "flow line" was required. For the purpose of showing that such an extension had been given by the commission, evidence was offered, which was excluded, from which it could have been found that prior to December 2, 1937, two of the three members of the commission, when at the reservoir, had sanctioned such an extension; that on January 12, 1938, the plaintiff wrote a letter to the commission in which it stated, among other things, that it had purchased the lumber in question from Hanifin, who had informed it that he had made arrangements with the commission for the lumber to remain above the "flow line" until December 1, 1939, and that it would like to have the same arrangement as to other lumber that was to be cut and stored, so that it could remain above the "flow line" until December 1, 1939; that at a meeting of the commission on January 27, 1938, at which all the commissioners were present, the matter referred to in the plaintiff's letter was discussed (evidence of this meeting and that the matter was discussed was admitted); that the secretary of the commission was instructed

to write a letter to the plaintiff granting an extension of time within which the lumber could remain at the plaintiff's risk on land above the "flow line"; and that on January 29, 1938, the secretary wrote a letter to the plaintiff acknowledging receipt of its letter of January 12, 1938, and stating: "I see no objection to the lumber remaining at your risk on land above the flow line . . . until December 1, 1939." One member of the commission testified that he knew the lumber was standing above the "flow line" after December, 1938, and that the commission, despite the fact that they knew the lumber was there, made no attempt to secure possession of it or take "title" on behalf of the Commonwealth. "We didn't want the lumber. We were trying to get rid of lumber." From proffered testimony, which was excluded, of another member of the commission, it could have been found that the commission knew the lumber was stored above the "flow line" after December 1, 1938, and that the commission at no time made any attempt to take possession of the lumber and did not assert any title to it. It was stipulated by the parties that there is nothing whatever in the record of the meeting of the commission on January 27, 1938, which in any way pertains to or refers to any request of the plaintiff for an extension.

Apart from other evidence, hereinafter referred to, relative to what the plaintiff did with reference to the lumber during 1939 up to the time of the fire, the foregoing is, in substance, all the material evidence admitted or excluded, and with the trial in that state the judge stated to the jury that, in the interests of shortening the time of the trial, he was going to rule on a question which lay "at the very threshold of the case, that all parties may have it determined, if they see fit, by a higher tribunal . . . and that is in regard to the title to this lumber which was burned allegedly through the negligence of the defendant here." He ruled that, there being no record of any modification of the Hanifin contract by way of extension of time for the removal of the lumber, the lumber reverted to the Commonwealth, and that an extension of time could be only by modification of the contract through a vote of the commission,

recorded upon its records through its clerk, and that consequently the plaintiff had no title to the lumber. He directed the jury to return a verdict for the defendant, saving the exception of the plaintiff to his ruling, "so that . . . [it] may get a decision from a higher court and if I am wrong . . . the case can be tried out comparatively briefly upon merely the questions of negligence and damages." The plaintiff saved exceptions to the exclusion of the proffered evidence hereinbefore referred to and also to the judge's ruling, and to his direction of a verdict for the defendant, and the parties stipulated that if on the competent evidence the ruling was incorrect and the direction of a verdict for the defendant was error, a new trial should be had, otherwise judgment should be entered on the verdict. The judge approved this stipulation and reported the case to this court. (G. L. [Ter. Ed.] c. 231, § 111.)

1. We are of opinion that there was no error in the exclusion of evidence tending to show that the Hanifin contract had been modified, or in the ruling that the plaintiff had no title to the lumber in the sense in which the word title was therein used. It is unnecessary to repeat what was said in *Hanifin* v. *C & R Construction Co.*, *ante*, 651, to the effect that, if the lumber was not removed from the proscribed area within the time provided by the contract, the title to it reverted to the Commonwealth and nothing had to be done by it to enforce the forfeiture or reverter.

Since 1897, at least, it has been provided, in effect, that every department, board, commission, or office of the Commonwealth, or of a county, city or town, for which no clerk is otherwise provided by law, shall designate some person as clerk, who shall enter all its votes, orders, and proceedings in books and shall have the custody of such books, and the department, board, commission, or office shall designate an employee or employees to have the custody of its "other public records." St. 1897, c. 439, § 2. G. L. (Ter. Ed.) c. 66, § 6. When said c. 439, entitled "An Act relative to public records," was enacted, it was provided in § 1, that the words "public records" when used in that or any other act should, unless manifestly inconsistent with

the context, be construed to mean any written or printed book or paper, or any map or plan of the Commonwealth, or of any county, city or town "in or on which any record or entry has been or is to be made in pursuance of any requirement of law . . . and any book, paper, record, or copy mentioned in either of the five following sections." It is unnecessary to refer in detail to the "following" sections other than § 2. The provisions of §§ 1 and 2 of said c. 439 appeared in R. L. c. 35, §§ 5 and 11. When the General Laws were enacted the section containing the definition of public records was placed in c. 4, § 7, Twenty-sixth, and the provisions relative to the keeping of departmental and other records were placed in c. 66, § 6. The commission that was appointed to consolidate and arrange the Public Statutes was not authorized to make substantive changes. See Res. 1896, c. 87. *Commissioners of Public Works* v. *Cities Service Oil Co.* 308 Mass. 349, 359. In the preliminary report of the commissioners to consolidate and arrange the general laws including provisions of the Revised Laws (see Res. 1916, c. 43), it was stated with reference to R. L. c. 8, entitled "Of The Statutes," that "Although in this chapter we expect to recommend in our final report many additional definitions, there are none which appear to be changes of substance." (Vol. I, page 71.)

The commission in the case at bar consisted of three members. (See St. 1926, c. 375.) It is unnecessary to refer to statutes that were from time to time enacted after 1926 relative to the powers and duties of this commission. It was referred to in *Maher* v. *Commonwealth*, 291 Mass. 343, 346, as a "State board charged with extensive powers of eminent domain. . . ." See *Boston & Albany Railroad* v. *Commonwealth*, 296 Mass. 426, 432. It is a general rule that a board of public officers should act jointly and that all should have an opportunity to participate in their action, *Pettengell* v. *Alcoholic Beverages Control Commission*, 295 Mass. 473, 477, although the joint authority of a commission may be exercised by a majority. (G. L. [Ter. Ed.] c. 4, § 6, Fifth.) *Real Properties, Inc.* v. *Board of Appeal of Boston*, 311 Mass. 430, 433–435. The members of a public

board cannot act separately as individuals. *Carbone, Inc.* v. *Kelly*, 289 Mass. 602, 605. In the application of these rules, it is apparent that no valid extension of time for the removal of the lumber, as a result of what two members of the commission may have told Hanifin when they were at the reservoir, could have been found, and this is true without reference to the question whether there is any record of this action of the two commissioners.

It is a general rule that where a public board is required to act through votes at meetings and to keep records of its acts, the record, duly kept, cannot be varied or added to by other evidence. *Carbone, Inc.* v. *Kelly*, 289 Mass. 602, 605, and cases cited. As was said in the case just cited, "Like other aspects of the so called parol evidence rule, this is a rule of substantive law and not a part of the law of evidence. It forbids proof of acts of the board by any evidence other than the record." (Page 605.) *Scullin* v. *Cities Service Oil Co.* 304 Mass. 75, 79. It could have been found that the commission, all members being present, at a meeting on January 27, 1938, discussed the request of the plaintiff for an extension of time within which the lumber could be removed, and, from testimony that was excluded, that the secretary was instructed to inform the plaintiff that the commission had no objection to the storing of the lumber during that time. But there is nothing in the record of that meeting pertaining or referring in any way to the plaintiff's request for an extension. The question, therefore, is squarely presented whether, in the absence of any record of an extension of time, parol evidence is admissible to show that an extension was granted.

If the granting of an extension was something that was required by law to be recorded, it follows that, in the absence of any record, the extension cannot be shown by parol evidence. In the cases that have been called to our attention in which the rule was applied that proof of the acts of public boards must be shown by the record, there was some provision of law which required the keeping of records apart from the provisions of c. 66, § 6. As far as we have been able to discover, there is no provision of law, apart from that

contained in said § 6, requiring the commission in the case at bar to keep records. Section 7, Twenty-sixth, of said c. 4 contains the broad provision that the words "public records" shall mean any written or printed book "in or on which any entry has been made or is required to be made by law." There was evidence that the secretary of the commission takes the minutes of the meeting and reduces them to typewritten form, and that this is read at the next meeting, when the minutes are approved or disapproved, or if any necessary changes seem to be proper, they are made, and the minutes are approved. There is no specific requirement in said § 6 that the commission, itself, shall keep records, but when the provisions of § 7, Twenty-sixth, of said c. 4 are read in connection with the provisions of said § 6 (and as already appears, these sections originally were enacted as §§ 1 and 2 of St. 1897, c. 439), we are of opinion that the requirement of said § 6 that all votes, orders, and proceedings of the commission shall be entered by the clerk, brings the records of the commission within the definition contained in § 7, Twenty-sixth, of said c. 4. This last section does not go into the question of who is to make the record. But if an entry has been made or is required to be made by law, then, in construing statutes, unless a contrary intention clearly appears, the words "public records" therein include any written or printed book in which such an entry, so required, has been made.

The provision of § 6 of said c. 66, to the effect that "all . . . votes, orders, and proceedings" shall be entered, is sweeping. It is not confined merely to votes of a public board, but includes also its orders and proceedings. The obvious purport of the section is to require that a public record of the proceedings shall be kept and it must have been intended that a record so kept should constitute a public record. We find nothing in the cases where the provisions of what is now § 6 of said c. 66 have been considered that suggests any other conclusion. See *Round* v. *Police Commissioner for Boston,* 197 Mass. 218, 220, 221; *Allen* v. *Kidd,* 197 Mass. 256, 259; *Franklin Savings Bank* v. *Framingham,* 212 Mass. 92; *Butchers Slaughtering & Melting*

*Association* v. *Boston,* 214 Mass. 254, 258, 259; *Commonwealth* v. *Segee,* 218 Mass. 501, 503; *Jewett* v. *Boston Elevated Railway,* 219 Mass. 528, 532; *Fondi* v. *Boston Mutual Life Ins. Co.* 224 Mass. 6, 8; *Commonwealth* v. *Slavski,* 245 Mass. 405, 415–417; *Dyer* v. *Scott,* 253 Mass. 430, 432; *Hurley* v. *Board of Public Welfare of Lynn,* 310 Mass. 285; *Hobart* v. *Commissioner of Corporations & Taxation,* 311 Mass. 341, 347, 349. There is a strong intimation that the conclusion here reached was in the mind of the court when the case of *Scullin* v. *Cities Service Oil Co.* 304 Mass. 75 was decided, where, at page 79, referring to the law as it was when *Willard* v. *Newburyport,* 12 Pick. 227, was decided, to the effect that selectmen were not then required to keep records of their proceedings, it was said, "See now, however, G. L. (Ter. Ed.) c. 66, § 6." As already pointed out, the general rule forbids proof of acts of the board by any evidence other than the record. (*Carbone, Inc.* v. *Kelly,* 289 Mass. 602, 605.) This rule is broad enough to prevent the introduction of parol evidence for the purpose of showing a waiver or ratification. Statute 1937, c. 352, § 1 (the provisions of which by § 2 were made applicable to the commission in the case at bar), added to G. L. (Ter. Ed.) c. 92 a § 60A which provides in substance that except in cases of special emergency involving the health or safety of the people or their property, no contract for construction work, the estimated cost of which amounts to or exceeds $1,000, shall be awarded by the commission, unless proposals for the same shall have been invited by advertisements published in newspapers; that all such proposals shall be opened in public; and that all contracts made where the amount involved is $1,000 or more shall be in writing. This statute was in effect when the contract, which involved more than $1,000, was awarded to Hanifin, and there was a compliance with its provisions. The awarding of this contract was no perfunctory matter and we are of opinion that an attempted modification of it required the formal action of the commission. Upon evidence that was excluded, properly, as we think, it could have been found that the attempted modification took place at a meeting of the commission, and as a result of "proceedings" within the

meaning of § 6 of said c. 66. It well may be that the commission did not want the lumber and that it was trying to get rid of it. It is unnecessary to speculate as to the reasons why the provisions were inserted in the Hanifin contract relative to the time or times within which the lumber was to be removed. The fact is that these requirements were inserted and the parties must be held not only to have understood their significance, but also to have understood that they would not be changed by unavailing efforts made by Hanifin and the plaintiff to obtain extensions of time. If there is anything inequitable resulting from the conclusion that an extension of time cannot be found outside the records of the commission, it is enough to say that the result is inevitable and finds its justification in the public policy involved.

2. The plaintiff contends, however, that there was error in the direction of the verdict for the defendant for the reason that it could have been found that the plaintiff had such possession of the lumber as to entitle it to recover, if the defendant was negligent. The stipulation that was approved by the trial judge provides, among other things, that if the direction of a verdict for the defendant was error, a new trial is to be had. See *Roberts* v. *Anheuser Busch Brewing Association,* 211 Mass. 449. Hanifin's contract with the Commonwealth, as already pointed out, provided, among other things, that all cut timber and hardwood were to be removed from the designated area on or before December 1, 1938, and that any of it remaining on "said premises" after that date should be deemed abandoned and become the property of the Commonwealth. There was evidence that employees of the plaintiff visited the place where the lumber was stored almost every day during the year 1939 up to the time of the fire; that large quantities of the lumber were removed by the plaintiff from that place during 1939; and that an employee of the plaintiff had been at the place two days before the fire occurred. As already appears, it could have been found that the commission knew that the lumber was there and that it made no attempt to secure possession of it, or to take "title" on

behalf of the Commonwealth. It would seem from the record that the trial judge, in ruling that the plaintiff had no title to the lumber that was burned, did not take into account the permissible findings as to any possession of it by the plaintiff. But with some hesitation we think the question is open on all the evidence whether the verdict was rightly ordered. *Salem Trust Co.* v. *Deery*, 289 Mass. 431, 433. *Mansfield* v. *Lang*, 293 Mass. 386, 393. See *Rubin* v. *Huhn*, 229 Mass. 126, 129.

Any license of the plaintiff to remove the lumber after December 1, 1938, the date provided in Hanifin's contract for its removal, expired on that date. The lumber then became the property of the Commonwealth. Moreover, the plaintiff's grantor, Hanifin, had agreed that the lumber should be deemed abandoned. It could have been found, however, that despite the provisions of the Hanifin contract, the plaintiff exercised acts of dominion over the lumber for an extended period of time during which it removed large quantities of the lumber and that, as far as appears, there was not only no interference on the part of the commission representing the Commonwealth, but also no effort to take possession of the lumber. That the plaintiff's possession of the lumber prior to December 1, 1938, was rightful is not questioned. From testimony that was excluded subject to the plaintiff's exception, it could have been found that the commission took steps that were unavailing, as hereinbefore pointed out, to give the plaintiff an extension of time within which to remove the lumber. For all that appears, the plaintiff after December 1, 1938, continued to deal with the lumber as if it were its own, apparently under a claim of right. It is true that after that date it was dealing with the property of the Commonwealth, and, as far as appears, without right, although very likely it assumed that a valid extension of time had been granted. Actually the plaintiff was a trespasser after that date, and the question is presented whether, on the permissible findings, it may recover damages for an alleged negligent act of the defendant. It does not appear that the defendant, by virtue of its contract with the Common-

wealth, had anything to do in the area where the lumber was stored when burned. Accordingly, the main question involves the subsidiary question whether the defendant, if a tortfeasor, can defeat the plaintiff's claim by setting up title or rights of the Commonwealth.

It is the general rule that any actual possession of real estate is sufficient to enable the parties in possession to maintain an action against a stranger for interfering with that possession and that everyone must be deemed a stranger who can show no title and no older possession. *First Parish in Shrewsbury* v. *Smith*, 14 Pick. 297, 301. As was said in *Barnstable* v. *Thacher*, 3 Met. 239, 242–243, "To support an action of trespass . . . , it is necessary to prove the actual possession of the plaintiff, and an illegal entry by the defendant. The action is founded merely on the possession, and it is not necessary for the plaintiff to show a right of property. He must prove such a lawful possession of the land as the defendant has no right to disturb; but any possession is a legal possession against a wrong-doer . . . . A person in the actual occupation of land may maintain trespass against any person except the real owner, or the person having a right of possession." *Perry* v. *Weeks*, 137 Mass. 584, 587. *Litchfield* v. *Ferguson*, 141 Mass. 97, 100. *Nickerson* v. *Thacher*, 146 Mass. 609. *Percival* v. *Chase*, 182 Mass. 371, 374. See *Cutts* v. *Spring*, 15 Mass. 135, where a plaintiff in possession of land was allowed to recover the value of trees that had been cut by the defendant. The reasoning in most of the cases just cited was adopted in *Hunt Drug Co.* v. *Hubert*, 298 Mass. 195, where the plaintiff, a tenant of a drug store, in front of which there was a sidewalk clock and electric sign, was allowed to recover for damage to them caused by their being struck by the defendant's truck, the action being for negligence.

It is a general rule that a bailee may recover against a stranger for taking chattels from his possession. See *Belli* v. *Forsyth*, 301 Mass. 203, 204–205, and cases cited. In the application of this rule it was said in *Brewster* v. *Warner*, 136 Mass. 57, 58, that the possession of the bailee "is as much protected against one form of trespass as another

and will support an action for damage to property, as well as one for wrongfully taking or destroying it. No distinction has been recognized by the decisions." See *Anthony* v. *New York, Providence, & Boston Railroad,* 162 Mass. 60, 65; *Field* v. *Early,* 167 Mass. 449, 452, 453.

There seems to be no good reason for thinking that there is any distinction between the effect of the possession of realty and of personalty, where the possession had been obtained tortiously, as against the wrongful acts of a stranger who disturbs, injures, or destroys the thing possessed. In *Commonwealth* v. *Finn,* 108 Mass. 466, 468, it was said that possession of personalty is prima facie evidence of title and that against all persons not having a better right "it constitutes, or rather answers for a right of property. An action, alleging property, may be maintained upon it; because a mere stranger, who derives no title, right or authority from the previous owner, cannot set up his title against the right thus gained by possession. *Burke* v. *Savage,* 13 Allen, 408. This is true, not only as against one who disturbs that possession; but, if the possession is not parted with voluntarily, it is equally so against any one who afterwards meddles with the property without right." See *Roberts* v. *Wentworth,* 5 Cush. 192, 193; *Magee* v. *Scott,* 9 Cush. 148, 150–151; *Shaw* v. *Kaler,* 106 Mass. 448. In *Jeffries* v. *Great Western Railway,* 5 El. & Bl. 802, it was said that a person possessed of goods, as his property, has a good title as against every stranger, and that anyone who takes them from him, having no title in himself, is a wrongdoer and cannot defend himself by showing that there was title in some third person; "for against a wrongdoer possession is a title" (page 805), and that in this respect there is no difference between trespass and trover. (Pages 805–806.) It was there held that a wrongdoer in actual possession of goods, the property of a stranger, could recover their value in an action of trover against a wrongdoer who had taken the goods from him. It was pointed out that up to that time it had not been decided whether, in an action of trespass or trover respecting personal property, the simple fact of possession, "which is unquestionably evidence of title,"

is conclusive evidence and constitutes a complete title in all cases against a defendant who is a mere wrongdoer, "as it does in actions of trespass to real property, and in those actions for injuries to personal chattels, in which the plaintiff had a special property in such chattels." It was then said that it had become necessary to decide that point; "for in this case the defendant is a wrongdoer, and he has not been permitted to give in evidence the title of a third person against whom he is himself a wrongdoer." (Page 807.) It was held that the evidence was excluded rightly. (Page 808.)

The rule stated in the *Jeffries* case seems to have been followed generally. See *The Winkfield*, [1902] P. 42; *Glenwood Lumber Co. Ltd.* v. *Phillips*, [1904] A. C. 405, 410–411; *Anderson* v. *Gouldberg*, 51 Minn. 294; *Catterlin* v. *Douglass*, 17 Ind. 213; *Wheeler* v. *McCorristen*, 24 Ill. 40; *Van Namee* v. *Bradley*, 69 Ill. 299; *Lewis* v. *Birdsey*, 19 Ore. 164, 168–171, and cases cited; *Cullen* v. *O'Hara*, 4 Mich. 132, 136–137; *Johnson* v. *Carnley*, 10 N. Y. 570; *Duncan* v. *Spear*, 11 Wend. 54; *Bates* v. *Campbell*, 25 Wis. 613, 615; Am. Law Inst. Restatement: Torts, §§ 157, 158, 162, 218, 222, 248, 895; *Cutts* v. *Spring*, 15 Mass. 135, 137; *Shaw* v. *Kaler*, 106 Mass. 448. Compare *Northern Pacific Railroad* v. *Lewis*, 162 U. S. 366, and cases cited; *Murphy* v. *S. C. & P. R. Co.* 55 Iowa, 473, and cases cited.

If the plaintiff, after December 1, 1938, could have been found to have obtained possession of the lumber, although in doing so it was a trespasser, and if it continued in possession long enough; or if it removed the lumber and no action of replevin or conversion was begun by the Commonwealth within the time limited for the commencement of personal actions, a plea of the statute of limitations would state a good defence to the action. G. L. (Ter. Ed.) c. 260, § 18. *Boston* v. *Nielsen*, 305 Mass. 429, 430–431.

The import of the word "possession" in law may depend upon circumstances. In Am. Law Inst. Restatement: Torts, § 216, a person who is in "possession of a chattel" is stated to be one who

(a) has physical control of a chattel with the intent to exercise such control on his own behalf, or, otherwise than as servant, on behalf of another, or

(b) has been in physical control of a chattel with intent to exercise such control, although he is no longer in physical control, if

    (i)  he has not abandoned it, and

    (ii)  no other person has obtained possession as stated in Clause (a), or

(c) has the right as against all persons to the immediate physical control of a chattel, if no other person is in possession as stated in Clauses (a) and (b).

See *Hamilton* v. *Nickerson*, 11 Allen, 308.   In the early case of *Cook* v. *Rider*, 16 Pick. 186, 187–188, it was said, as to possession of land, that what acts amount to a sufficient occupation must depend upon the nature of the soil and the uses to which it is applied, and that enough must appear to show that the party claiming has entered upon the land and has indicated in some way the extent of his claim, and that the possession followed and was kept up "according to the nature and situation of the property."   See, as to personal property, *Gibbs* v. *Chase*, 10 Mass. 125, 127, 129.   In *Kerslake* v. *Cummings*, 180 Mass. 65, one question was whether the defendant was "in possession" of land within the meaning of Pub. Sts. c. 11, § 13.   It was there said that the "possession which is required by the statute is that which the law recognizes as such, not a mere presence on, or dealing with, the land or a part of it, which falls short of such a relation to it that the supposed possessor could sue for a trespass."   (Page 67.)   There seems to be no difficulty in finding possession, even if there is no actual personal custody, if the chattel is under the control of the person and in a place where it is manifest that it must have been put by the act of the person or in his behalf, *State* v. *Russo*, 127 Maine, 313, 315;  or if the chattel is within the power of the person in such a sense that he can and does command its use.   *State* v. *Meyers*, 190 N. C. 239, 242–243.   *State* v. *Woodman*, 119 Kans. 679, 681.

We have in the case at bar timber, which we may assume has been sawed into lumber and stored on land of the Commonwealth. It is obvious that property of this character cannot be carried about on the person, and the question arises as to what kind of physical control, in order to amount to possession, was practical. We think it can be said that it is a matter of common knowledge that when timber logs are cut and the lumber is stacked, it has not, as yet, been thought that the person in possession is required to maintain guards over it, or to keep someone constantly on the premises where the lumber is stored. From the evidence in the case at bar, already referred to, as to the acts of the plaintiff in connection with the lumber after December 1, 1938, we are of opinion that it could have been found that, for all practical purposes, the plaintiff was in possession of the lumber at the time it was destroyed by fire, see *The Tubantia*, [1924] P. 78; *Ghen* v. *Rich*, 8 Fed. 159, and we are of opinion that the fact that the lumber was stored on the Commonwealth's land is not conclusive against such a possible finding.

Inasmuch as there must be a retrial, we point out that, as bearing upon the question of the plaintiff's possession, evidence of what the Commonwealth, acting through its authorized representatives, did or did not do by way of taking actual possession of the lumber after December 1, 1938, is competent.

Accordingly, we are of opinion that the plaintiff's exception to the direction of a verdict for the defendant must be sustained, and that there must be a new trial.

*So ordered.*