## WILLIAMS, SPEGAL *v.* STATE OF INDIANA.

[Nos. 968S143, 968S144. Filed December 11, 1969.]

*William T. Laswell,* Indianapolis, for appellants.

*Theodore L. Sendak,* Attorney General, *James F. Biddle,* Deputy Attorney General, for appellee.

HUNTER, J.—Appellants, Thomas John Spegal and Michael Allen Williams, were tried in the Marion County Criminal Court, Division Two, and convicted of theft on June 7, 1968. Both filed timely motions for new trials on the grounds that the findings and decision of the trial court are (1) contrary to law, and (2) not sustained by sufficient evidence. On the overruling of their motions, appellants prosecute this appeal.

Before examining the arguments urged upon the court by the appellants, it should be noted that in its brief, the appellee, State of Indiana, has devoted much attention to appellants' alleged non-compliance with the Rules of the Supreme Court of Indiana in perfecting their appeal. Appellee argues that appellants failed to comply in whole or in part with Rules 1-14B, 2-3, 2-5, 2-17, and 2-19. Although our holding in this case does not require us to discuss each of appellee's allegations, we feel obliged to recognize the impressive thoroughness of its research as well as its dexterity with our rules. We affirm, however, our prior position in the matter of non-compliance with these rules particularly in *criminal* cases: this court prefers to decide cases on their merits and we will do so where the appellants' brief, in spite of technical errors, sufficiently sets forth the exact questions raised and the reasons therefor. *Capp* v. *Lindenberg* (1961), 242 Ind. 423, 178 N. E. 2d 736. *Allison* v. *State* (1959), 239 Ind. 545, 157 N. E. 2d 193. *Wylie* v. *Meyers* (1958), 238 Ind. 385, 150 N. E. 2d 887.

The affidavit under which the appellants were charged reads as follows:

"State of Indiana, Marion County, SS:

The State of Indiana     In the Criminal Court
       vs.                    County of Marion
Edward Albert Eyster     July Term, 1967
Thomas John Spegal      Affidavit for Theft
Michael Allen Williams

Be It Remembered, That, on this day before me, Noble R. Pearcy Prosecuting Attorney of the Nineteenth Judicial Circuit, personally came Donald Mills who, being duly

sworn, upon his oath says that Edward Albert Eyster, Thomas John Spegal and Michael Allen Williams on or about the 14th day of August, A.D. 1967 at and in the County of Marion in the State of Indiana, committed a crime of theft in that they knowingly, unlawfully and feloniously exerted unauthorized control over a certain vehicle of Daniel R. Shaw, which vehicle is described as follows, to-wit: 1955 Chevrolet 2-Door Sedan, intending to deprive Daniel R. Shaw permanently of the use and benefit of said property, then and there being . . . contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana.

s/s Donald Mills

Subscribed and Sworn to before me, this 18th day of August, A.D. 1967"

The court below sitting without jury, found the appellants guilty of theft as charged. This offense is set out in Ind. Ann. Stat. § 10-3030 (1969 Cum. Supp.) as follows:

"Theft in general—A person commits theft when he (1) knowingly:

(a) obtains or exerts unauthorized control over property of the owner; . . . (2) either:

(a) intends to deprive the owner permanently of the use or benefit of the property; or

(b) uses, conceals or abandons the property in such manner as knowingly to deprive the owner permanently of such use or benefit; or

(c) uses, conceals or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit."

The title of the act under which this offense is found is the Offenses Against Property Act, Ind. Ann. Stat. § 10-3028, (1969 Cum. Supp.) which includes §§ 10-3028—10-3041. The penalty for said offense is found in Ind. Ann. Stat. § 10-3039 (1969 Cum. Supp.) That section provides for penalties as follows:

"Penalties—(1) A person convicted of theft of property not from the person and of less than one hundred dollars [$100] in value shall, except as otherwise provided in this section, be fined not more than five hundred dollars [$500] or im-

prisoned for not more than one [1] year, or both, or such person may be imprisoned in the state prison not less than one [1] year nor more than [5] years, and fined in a sum not exceeding five hundred dollars [$500] and be disfranchised and rendered incapable of holding any office of profit or trust for any determinate period . . ."

Appellants' argument that the findings and decision of the trial court were not sustained by the evidence is based on four alternative grounds: (1) The state failed to prove that the defendants ever had in their *possession* the property stolen. (2) That mere *possession* of stolen goods is not grounds in itself for conviction for theft, but must be coupled with other evidence showing that the defendants did in fact commit the crime of theft. (3) That the state failed to prove all of the elements of the offense under which the defendants were convicted in that the property stolen was not in fact a "motor vehicle" or a "vehicle". (4) And finally that the evidence presented by the state was obtained by a warrantless arrest made without probable cause and was therefore inadmissible.

The commission of the crime of theft, as set forth above, [§ 10-3030, *supra*] turns on the meaning of the phrase "obtains or exerts unauthorized control over property." Ind. Ann. Stat. § 10-3040 entitled "Definitions" which applies to § 10-3030, *supra*, states:

". . . (10) 'Obtains or exerts control over property' *includes but is not limited* to the taking, carrying, driving or leading away, concealment, or the sale, conveyance, encumbrance, transfer of title to or interest in, or *possession of property*, or the securing or extending a right to retain that to which another is entitled." (our emphasis)

Under the issues formed in this cause the burden was placed upon the state to prove each of the following elements of the crime charged, beyond a reasonable doubt before conviction would lie—they are:

(1) that the appellants knowingly exercised unauthorized control over the property and

(2) that they intended to deprive the owner, Daniel R. Shaw, permanently of the use and benefit of said property.

Appellants allege no error as to proof or sufficiency of the evidence relating to the second element of the offense charged.

It is clear that they base their appeal in this case on the theory that control of property requires proof of possession and unless possession is proved, there can be no finding of unauthorized control. This is clearly asserted in appellants' first two grounds for appeal. It is, therefore, incumbent upon us to examine the statute to determine the meaning and import of these terms and to test the sufficiency of the evidence as it relates thereto.

The terms *control* and *possession* are not precisely synonymous although they do have common elements in their meanings. Webster's International Dictionary gives the legal definition of possession as "one who has physical control of the things and holds it for himself." All the definitions contained in recognized law dictionaries indicate that the element of custody and control is involved in the term possession. *State* v. *Virdure* (1963), 371 S. W. 2d 196. Possession of a thing means having it under one's control or under one's dominion. *U. S.* v. *Malfi* (1959), 264 F. 2d 147. A person who is in possession of a chattel is one who has physical control with the intent to exercise such control on his own behalf. *New England Box Co.* v. *C & R* (1943), 313 Mass. 696, 49 N. E. 2d 121. Possession involves a present or, in case of constructive possession, a past ability to control the thing possessed plus an intent to exclude others from such control. *State ex rel. Edie* v. *Shain* (1941), 348 Mo. 119, 152 S. W. 2d 174. For additional definitions of the word *possession* see, 72 C. J. S., p. 233; also see "Possession" (control, care or custody), 33 Words and Phrases, p. 80; and "Custody" (charge control or possession) 10A Words and Phrases, p. 500.

By contrast the word *control* means the power or authority to manage, superintend, restrict, regulate, direct, govern, ad-

minister or oversee. Black's Law Dictionary, Fourth Edition. It is the power or authority to manage . . . restrict. *State* v. *First State Bank of Jud* (1924), 52 N. D. 231, 202 N. W. 391.

"Ordinarily control means . . . power or authority to check or restrain; regulating power; restraining or directing influence . . . *so to it may imply, or not imply possession, depending on the circumstances . . .*" 18 C. J. S., p. 28. (our emphasis)

See also the varying definitions of "Control" in 9A Words and Phrases, p. 4 and following.

Our conclusion based on a meticulous examination of the meanings of these two words is this: that to prove control over a chattel or over other property, one does not need in all cases to show conduct which amounts to possession. Although control is a necessary element in proving possession, the converse is not true. Our analysis is supported by the wording of the statute [§ 10-3040, *supra*] which states that the definition of "exert control over property" includes *but is not limited* to possession.

Against this analysis, let us examine the evidence most favorable to the state in this case: Direct examination of the arresting officer Bernard L. Smith of the Indianapolis Police Department elicited the following:

"Q. Where was the vehicle you saw on that date?
A. It was at the rear of 3631 East Washington, in a garage —had the rear door, overhead door, open.
Q. The garage door was open?
A. Yes sir.
Q. Were any other persons present in that vicinity around the time you saw it?
A. Yes, sir, there were.
Q. Who were those person [sic]?
A. Thomas Spegal. Mike Williams and Steve—the name he gave me—Steve Gulley—Eyster—Edward Albert Eyster.

Q. Now on that date, at that location, when you saw that vehicle, what was Edward Albert Eyster the defendant, doing if anything?

A. He had just stepped out of the inside of the car, the front seat, and started walking toward the open door.

Q. What was the defendant, Thomas John Spegal, doing, if anything, at that time? At that location?

A. He was working over the passenger side fender, the hood was removed, working on the motor.

Q. And what was the defendant, Michael Allen Williams, doing at that time, at that location, if anything?

A. He was back in the corner, over to the left front fender, working on the motor.

Q. Where was he [Albert Eyster] when you first observed him?

A. He had just stepped out of the passenger's side front seat and upon my entering the garage from the alley, he—

Q. Did you see him prior to entering or—

A. Yes, he was in the car and, to me, it looked like he was taking the steering wheel. It had a wooden steering wheel on the car, and he was taking it off, because he had the chrome rim of the wheel in his pocket. Which I took it off of him.

Q. Yeah, And what did you say to Spegal and what all did he say to you? After you had explained all these rights to him and had him sign this Miranda warning paper?

A. I didn't.

Q. Oh you didn't have him sign the waiver?

A. No, I advised him of his rights and that was it. And told him he was under arrest.

Q. What did he say to that?

A. He said that he was working on the car for a friend."

Officer Smith was accompanied by Officer James Chapman when he made the above arrests. The latter officer testified to substantially the same set of facts and circumstances. Furthermore, Daniel R. Shaw stated that he never authorized anyone to have possession of his motor vehicle, that he reported to police by telephone on the evening in question that his car had been *taken,* and that it was *missing.*

From this evidence together with the reasonable inferences deducible therefrom, we hold as a matter of law that the trial court did not commit error in finding that the defendants had exercised unauthorized control over Daniel Shaw's vehicle. The power, restriction, and influence exerted by defendants which the trial court found amounted to unauthorized control could have been proven independent of actual proof of possession. Our holding here is based only on a finding of unauthorized control and not on a finding that defendants were in possession of the vehicle at the time of their arrest.

Appellants' third ground for alleged error on appeal is that the state failed to prove all of the elements of the offense charged "in that the property stolen was not in fact a 'motor vehicle' or a 'vehicle'." Under the statute [§ 10-3039, *supra.*]

"... (4) A person convicted of theft shall be fined in any sum not exceeding five thousand dollars [$5,000] or imprisoned for not less than one [1] year nor more than ten [10] years, or both, and be disfranchised and rendered incapable of holding any office of trust or profit for any determinate period regardless of the monetary value of the stolen property if: ... (d) the property stolen is a *motor vehicle* or is a gun suitable for use as a firearm; or ..." (our emphasis).

Appellants add additional uncertainty to their argument by incorrectly alleging that they were convicted under Ind. Ann. Stat. § 10-3036 (1969 Cum. Supp.) instead of § 10-3030, *supra,* cited above. The statute [§ 10-3036, *supra*] reads as follows:

"Obtaining or exerting unauthorized control over a vehicle. —A person commits a crime when he: (1) knowingly obtains or exerts unauthorized control over the vehicle of the owner under circumstances not amounting to theft; or (2) accompanies another in a vehicle, aware that such other knowingly obtained or is exerting unauthorized control over the vehicle."

The affidavit under which appellants were charged and convicted clearly sets forth the crime of theft of property, to-wit:

a certain vehicle, as set forth in § 10-3030, *supra*. Moreover it contains the words "Affidavit for Theft" and alleges the intent to permanently deprive the owner the use and benefit of said property. Neither of these elements are found any where in § 10-3036, *supra*. Since § 10-3030, *supra*, is satisfied when unauthorized control is exerted over *property*, we will not engage ourselves in the semantic frivolity of determining whether a motor vehicle without a crankshaft is a vehicle or is not a vehicle. Suffice it to say that the "thing" which appellants exerted unauthorized control over was property owned by another. That is what is required by the statute [§ 10-3030, *supra*].

Appellants' only valid contention in this regard involves the question of value. The penalty for conviction for theft under the above statute as set forth above [§ 10-3039(1), *supra*] provides for a fine of not more than five hundred dollars [$500] or imprisonment for not more than one year, or both where the property is of less than one hundred dollars [$100] in value. Appellants argue that in the present case, no value was established for the missing car thereby failing in the proof of an essential element of an offense charged so that conviction could not be sustained. We disagree.

The appellee, State of Indiana, did not prove that the property was valued at more than one hundred dollars [$100]. They did however introduce evidence to show that the owner, Daniel Shaw, had paid $50 when he purchased the car and had worked on it for over one and one half years. We cannot ignore this evidence and say that this property had no value at all. The trial court found appellants guilty of theft and adjudged the lesser of the two penalties under the statute. They were sentenced to 364 days at the Indiana State Farm and fined $1.00 and costs. This is consistent with the finding under § 10-3039(1), *supra*, that the property was of some value which did not exceed $100. We think this is correct and supported by the evidence.

Appellants' final ground for error is that the evidence presented by the state resulted from an arrest without probable cause and without a warrant. Therefore it should have been inadmissible. They argue that "absolutely no probable cause" was shown by the state when the arrest was made. Nor was there an attempt made to acquire a warrant for arrest or search even though the "circumstances presented clearly show that time would have allowed the acquisition of such a warrant". Furthermore they contend that there is no showing whatsoever by the state nor any reasonable inference from the evidence that the defendants were in fact committing *any* illegal act at all and, therefore, the arrest is invalid.

This is not a case, as appellants would have us believe, where the probable cause for the arrest was based on the information of an informant or a statement made to an officer by a citizen. Appellants in support of their argument cite numerous cases where third parties provided law enforcement officials with information, in which is imposed the well settled requirement that such informants be both reliable and credible. *Brinegar* v. *U. S.* (1949), 338 U. S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879. *Johnson* v. *U. S.* (1947), 333 U. S. 10, 68 S. Ct. 367, 92 L. Ed. 436. *U. S.* v. *Clark* (1938), 29 F. Supp. 138. *Brady* v. *U. S.* (1924), 300 F. 540. *Ard* v. *U. S.* (1932), 54 F. 2d 358. Further they cite the Indiana case, *Crowe* v. *State* (1969), 251 Ind. 562, 243 N. E. 2d 759, recently decided by this court, in which we said that for probable cause to be sufficient for an arrest, the information furnished in the first place must be reliable.

In the instant case the officers stated that they had observed the conduct themselves as testified to above, which conduct they say led them to believe that a crime was being committed. Officer Smith who was Daniel Shaw's brother-in-law was very familiar with the latter's car—he testified that he had seen it "hundred of times" in Shaw's back yard. Smith stated that Shaw never notified him that the car was missing, that

he heard about it the day following the alleged theft on or about the 15th of August, 1967. He had had several reports that acts of stripping cars had been going on at the address where Shaw's car was found and he watched it. He said that he did so because he worked the east side.

Officers Smith and Chapman were not led to the scene nor did they execute the arrest on information given them by any informant or other third party. They were routinely checking the said address when they observed the appellants in and around the vehicle which Officer Smith recognized as belonging to his brother-in-law. The hood had been removed, a window was broken, and appellants were observed to be in the act of committing a crime in the eyes of the officers. Under these circumstances we believe that the arrest was lawful and probable cause was satisfied. "Probable cause" justifying arrest without a warrant exists where facts and circumstances within arresting officer's knowledge or of which he had reasonably trustworthy information would lead a reasonably prudent person under the conditions at the time to believe a crime was being or had been committed. *Manson et al.* v. *State* (1967), 249 Ind. 53, 229 N. E. 2d 801, cert. denied 390 U. S. 995, 88 S. Ct. 1198, 20 L. Ed. 2d 95. *Henry* v. *United States* (1959), 361 U. S. 98, 80 S. Ct. 168, 4 L. Ed. 2d 134.

We must also reject appellants' contention that the facts presented clearly show that time would have allowed the acquisition of an arrest warrant. On the contrary we believe that the officers could reasonably have inferred from the events they witnessed that time did not allow for the securing of an arrest warrant. We know of no constitutional requirement which compels law enforcement officers who themselves witnessed the commission of a crime to jeopardize the possibility of apprehension and conviction by leaving the scene to seek out a warrant to arrest the suspects. On the contrary, a warrantless arrest for crime committed in

view of the arresting officers is recognized as permissible at law and by the United States Supreme Court. *United States* v. *DI RE* (1948), 332 U. S. 581, 68 S. Ct. 222, 92 L. Ed. 210.

Lastly, the appellants waived their objections to the admissibility of the testimony of the two police officers by failing to object to it at the trial. Not only did they fail to object, but the counsel for appellants conducted extensive cross-examination of the two police officers without ever objecting to their taking the stand or to their testimony. Surely, appellants are not asking us to permit them to elicit a complete compendium of implicating evidence from the state's two witnesses [almost all of which evidence was gathered independent of the arrest] for the purpose of objecting to its tainture on appeal. This is particularly offensive in view of the absence of any objection during the trial. *Kline* v. *State* (1924), 194 Ind. 334, 142 N. E. 713.

For all the above reasons we hold that the evidence is sufficient to sustain the findings of the trial court and its decision is not contrary to law. The judgment should, therefore, be affirmed.

Judgment affirmed.

Arterburn and Givan, JJ., Concur.

DeBruler, C.J., Concurs in Part and Dissents in Part with Opinion.

Jackson, J., Dissents without Opinion.

### CONCURRING-DISSENTING

DeBruler, C.J.—I concur in the majority opinion wherein the conviction of the appellant Thomas John Spegal is affirmed. I dissent from the majority opinion wherein the conviction of the appellant Michael Allen Williams is affirmed.

There is a total absence of evidence from which the trier of fact could find that Williams exerted unauthorized control over the car. No evidence exists which would support his having knowledge that the car was stolen. On the other hand

Spegal had been told of the theft by the owner prior to the arrest. I vote to reverse the conviction of the appellant Williams.

NOTE.—Reported in 253 N. E. 2d 242.