LEE W. NELSON, ROBERT W. SUBLETTE, ALVIN E. CORELY *v.* STATE OF INDIANA.

[No. 1-1074A156. Filed December 1, 1975.]

*John F. Davis*, of Evansville, for appellants.

*Theodore L. Sendak*, Attorney General, *Robert M. Lingenfelter*, Deputy Attorney General, for appellee.

LOWDERMILK, J.—The appellants and Joseph R. Reed are four black men who were residents of the State of Tennessee and who were charged with the crime of theft and later tried on an amended affidavit charging said crime. (IC 1971, 35-17-5-3 (Burns 1956 Repl.)) All appellants and Mr. Reed were found guilty as charged by a jury, after which the court pronounced sentence as to each of them for a term of not less than one (1) nor more than ten (10) years; except the sentencing of Mr. Reed was deferred. (Defendants herein will be referred to as appellants.)

Motion to correct errors was timely filed and was by the court overruled.

Appellants drove a dark green Ford automobile to the rear of Lutterman's Market in Mt. Vernon, Indiana, about 4 o'clock P.M. on January 23, 1974. In driving in they bumped the truck of one William Askran who testified there were four black males in the automobile and after they parked they went into the grocery store.

There were but a few customers in the store, together with the appellants and Reed. Lisa Oyler was cashier at register number 2 and was out of the store when the four men entered. Veda Brauser, also a cashier, had at that time checked out a customer and saw her register (number 3) was full of paper money. There being no other customers then ready to check out Mrs. Brauser left her post which was adjacent to the cash register of Mrs. Oyler, to do other work and was gone three to five minutes with her register unlocked and unattended. There were four cash registers set up side by side with customer lanes between them.

Lisa Oyler returned to work and observed four black men come up to her register, one of whom was going to sack his purchase and the other two started putting things together and the one who had been sacking his purchase started talking real loud while he and two of the others made a huddle around her and all started talking around her in loud tones. After Lisa Oyler checked the three out they left and the fourth black man came through, and left after paying for some merchandise.

Mrs. Oyler had not heard Mrs. Brauser's cash register ring while unattended during this time, although it would ring if a key was pushed to open the cash drawer.

After the four men left Mrs. Oyler called Mrs. Brauser to her cashier's post to check out some customers and when she rang up the sale and the cash box opened she noticed it was empty. Mr. Lutterman, a part owner, was immediately

notified and he checked the tape which showed a blank or "no sale" spot between the last sale by Mrs. Brauser and the first one she had made after being called to her post and just after the appellants and Mr. Reed had left the store following their loud talking and huddle around Mrs. Oyler.

One of the men, later identified as appellant Nelson, was wearing an unusual hat and was observed by the cashiers and several other witnesses. This hat was identified by Mrs. Oyler as the hat worn by appellant Nelson.

The four appellants left the store together in a leisurely manner, entered their automobile, and drove away in the same manner and were later apprehended in Illinois by an Illinois State Trooper.

Appellant Nelson was patted down and had over $700 folded up in one pocket, which was confiscated. The other defendants each had money on their person, either in a billfold or loose in a pocket. This money consisted of United States currency of some $100 dollar bills, some $50 dollar bills and some of smaller denominations, all of which was taken by the police and held in the custody of the Illinois sheriff.

Appellants' motion to correct errors will be set out and answered specification by specification.

Specification 1-A is that the court erred in overruling the appellants' motion to quash the warrant for arrest and for discharge. No question is raised by this specification as appellants did not argue the same in their brief under Ind. Rules of Procedure, Appellate Rule 8.3 (A) (7), which reads in part as follows:

"(7) An argument . . .

". . . any error alleged in the motion to correct errors not treated as herein directed shall be deemed waived."

Specification 1-B is that the court erred in overruling appellant's motion for a change of venue from the county and

specification 1-C is that the court erred in overruling appellants' motion for separate trials. We shall treat these two specifications together under Rule AP. 8.3(A) (7).

Appellants in the argument section of their brief in discussing change of venue from the county admitted that in a case of the kind before us the matter of a change of venue from the county is discretionary.

Appellants further state that they are not separately arguing as error the denial of their change of venue from the county. We are, therefore, constrained to hold that appellants have waived any claimed error on change of venue.

Preferring to pass on the merits of the case upon this point, we further quote from *Johnson* v. *State* (1972), 152 Ind. App. 104, 281 N.E.2d 922 at 927, as follows:

". . . The test to be applied in determining whether there has been an abuse of discretion has been held to be whether the defendant had a fair trial, not what was asserted in the application for change of venue. *Carraway* v. *State* (1956), 236 Ind. 45, 47, 138 N.E.2d 299." 281 N.E.2d at 927.

In the case at bar we are unable to find any evidence that appellants did not receive a fair and impartial trial. Hence no abuse of discretion was shown.

Appellants urge under specification 1-C that the court erred in overruling appellants' motion for separate trials, that the appellants were four black men from Tennessee being tried in a county with 1% black population and less percentage as registered voters. In the motion for separate trials appellants point out to the court that they were black men, not from the county of trial or from Indiana. They also pointed out they had asked for and received a line up in Evansville, Indiana, and urge that separate trials should have been granted because defendant Reed was the only one of the four identified in the line up as being present at the store at the time of the theft.

They admit that a motion to separate is discretionary and must be measured by what transpired at the joint trial and not what is alleged in the motion.

Appellants urge the failure to grant separate trials was reversible error as appellants did not receive a fair trial when tried jointly and the same was an abuse of the court's discretion.

In *Garrison* v. *State* (1967), 249 Ind. 206, 231 N.E.2d 243, our Supreme Court said:

> "The soundness of the court's discretion in denying a motion for separate trials is measured by what transpired at the joint trial rather than what was alleged in the motion for separate trials. . . ." 249 Ind. at 209.

Appellants themselves showed that 1% of Posey County's population was black. Lisa Oyler, a cashier in Lutterman's Market, testified there were several Negroes living in Posey County, many of whom traded in Lutterman's and who were known to her.

We have found no evidence of racial discrimination in the trial and are of the opinion appellants were not prejudiced because of their race.

Specification 1-D charges error in the court's overruling appellants' pre-trial motion to suppress certain monies and testimony regarding the money and in overruling appellant's motion in limine to restrain the State from eliciting testimony regarding the money allegedly seized from appellants.

Specification 1-F charges the court erred in overruling appellants' motion to strike all testimony regarding money taken from the defendants for the reason that the State did not introduce the money taken from the defendants into evidence. We shall treat specifications 1-D and 1-F together.

The court sustained the motion in limine as to exactly who had taken what money from which of the appellants and Mr. Reed as that the money had all been commingled. However,

the court overruled that part of the motion which asked that the State be restrained from referring to the money taken in the theft.

The evidence was that the Illinois Trooper took a big fold of money consisting of about $700 from appellant Nelson and additional money from others. He further testified that the money confiscated from appellants and Reed had been commingled. The court was correct in sustaining the motion in limine as to that which had been commingled as it could not have been identified properly to be admitted into evidence. However, the court was also correct in permitting the State to show appellant Nelson had this large sum of money on him when searched and arrested and which was removed from his person.

Appellants now claim error in that the State did not introduce the money into evidence. Of course the State could not do so as it would have been improper under the court's order in limine to introduce into evidence the money which could not be positively identified as having come from Lutterman's Market. Appellants can not now be heard to complain of a lack of evidence as the evidence was not offered for the reason that appellants' motion in limine kept it out.

Specification 1-E is that the court erred in permitting the State of Indiana to reopen its case in chief over appellants' objections on two occasions.

Appellants moved for a directed verdict after the State rested, claiming the State had totally failed to prove ownership of the money taken and that Lutterman's Market was an entity capable of being an "owner" under the theft act or that Lutterman's Market had owned the stolen money.

In *Warrenburg* v. *State* (1973), 260 Ind. 572, 298 N.E.2d 434, our Supreme Court stated:

"Finally, the appellant contends that it was error for the trial court to allow the prosecution to re-open its case in

order to prove venue. This Court has previously held that the action of a trial court in allowing a party to re-open its case after it has rested is a matter of discretion that will not be disturbed unless clear abuse is shown. Maxey v. State (1969), 251 Ind. 645, 244 N.E.2d 650. . . ." 298 N.E. 2d 436.

We are unable to determine any abuse of discretion. Specific ownership is not a material element of theft. The elements of theft are (1) a knowing, unauthorized exertion (2) of control over the property of another (3) with the intent to permanently deprive the owner or person in possession of such property from the use or benefit thereof. *Williams* v. *State* (1969), 253 Ind. 316, 253 N.E.2d 242.

Lawful possession is sufficient. *Gunder* v. *State* (1968), 250 Ind. 689, 238 N.E.2d 655.

Specification 1-G is that the court erred in overruling appellants' motion for a directed verdict and a judgment of acquittal at the conclusion of the State's evidence.

Appellants cite and rely on several Indiana cases, each of which we hold is not binding on this court in the present case.

We have heretofore set out in this opinion facts of the case which were given in evidence in the trial of the cause. We shall supplement these with additional evidence of other witnesses. State Police Officer Fowler after stopping the car in a service station did not see two occupants in the back seat and was later informed by another party that two men were in the rear seat slumped down. These men were Reed and appellant Sublette. They had kept their faces down low when in view of the toll taker at the toll bridge just west of Mt. Vernon. Mr. Reed had been identified in the line up and also at trial was pointed out by a cashier, Lisa Oyler, as one of the men in the store who assisted in the huddle around her at the cash register after which the money was found to be gone, and although she would not identify the other three appellants she did say that two of them, Mr. Corley and Mr.

Sublette, looked familiar from the store. She also identified the hat worn by Nelson. (State's Exhibit No. 1.)

William Askran identified Nelson by picking him out of photographs. He saw the four men go into the store. He picked out Reed at the line up in Evansville.

Bobby Troxell, a witness, saw the four men go into the store and also saw them come out of the store after four or five minutes. He identified Nelson and Reed as having been in Lutterman's Market on the day in question. He identified the late model green Ford the men were in. He observed Nelson's unusual hat and stated the driver was wearing that hat.

Edward Lutterman testified that approximately $1,004.02 was missing from the cash register operated by Veda Brauser.

Sheriff William Cox testified that one of the subjects he later learned was Nelson had a hat on. He was present at the search of the subjects when the money was taken from them. State Trooper Fowler testified that Mr. Sublette had $400 and some odd dollars which included two one hundred dollar bills and one fifty dollar bill. Mr. Nelson had thirteen five dollar bills, four twenty dollar bills, one fifty dollar bill, seventy-nine ten dollar bills, four one dollar bills, two silver dollars and a dollar thirteen cents in change, with the tens all in one fold. Mr. Reed had $156.64 and Mr. Corley had $86.26.

We are of the opinion that from the above recital of evidence there was evidence of sufficient probative value from which the trier of the facts could reasonably infer guilt beyond a reasonable doubt and the court correctly overruled appellant's motion for a judgment at the close of the State's evidence.

Specification II was that the verdict was not supported by sufficient evidence, and Specification III was that the verdict was contrary to law. These specifications will be treated together.

Appellants support their position by relying on *Manlove* v. *State* (1968), 250 Ind. 70 at 77, 232 N.E.2d 874.

The evidence in the *Manlove* case was wholly circumstantial. Such is not the same in the case at bar, as appellants and Mr. Reed were all seen together by a number of witnesses in one automobile bearing a Tennessee license. Defendant Reed was identified, as was appellant Nelson and the other two appellants looked familiar to Mrs. Oyler.

It must be remembered all the evidence in *Manlove, supra,* was circumstantial while in the case at bar the evidence is circumstantial and that of eye witnesses. Therefore the *Manlove* case is not controlling in the case at bar.

In the case of *Rowe* v. *State* (1974), 262 Ind. 250, 314 N.E. 2d 745, the court said:

". . . it is not our function as an appellate court to weigh the evidence introduced at the trial or to decide questions concerning the credibility of witnesses testifying at the trial. *Priola* v. *State* (1973), [260] Ind. [117], 292 N.E.2d 604. Our proper role is to look to the evidence most supportive of the verdict and determine whether that evidence, along with the reasonable inferences which a trier of fact might draw from it, has established all the necessary elements of the offense charged. . . ." 314 N.E.2d at 747.

Appellants rely on and cite the case of *Gaddis* v. *State* (1969), 253 Ind. 73, 251 N.E.2d 658, 661, wherein they quote in their brief as follows:

"where the State's chief prosecuting witness by his own admission is unsure as to the identity of the criminal, such identification as a matter of law is insufficient."

The correct quote of the above reads as follows:

". . . Where the state's chief prosecuting witness, by his own admission is unsure as to the identity of the criminal, and where other evidence *or lack thereof* would support such uncertainty, this court would hold that such identification, as a matter of law, is insufficient evidence, by itself, to prove appellant to be the perpetrator of the crime." (Original emphasis.)

Apparently counsel for appellants mis-read the case or his secretary erred and did not correctly copy the court's full statement in his brief.

Our Supreme Court held in *McAfee* v. *State* (1973), 259 Ind. 687, 291 N.E.2d 554 at 556:

". . . The evidence in this case is circumstantial, but conviction may be sustained by circumstantial evidence alone, and we can not say that, based on that evidence, although only circumstantial, and the reasonable inferences to be drawn therefrom the evidence is insufficient as a matter of law. Where the sufficiency of circumstantial evidence is in question, we examine it carefully, not for the purpose of finding whether or not it is adequate to overcome every reasonable hypothesis of innocence, but with the view of deciding whether an inference may be reasonably drawn therefrom tending to support the finding of the trial court. . . ."

See also *Glover* v. *State* (1973), 157 Ind. App. 532, 300 N.E. 2d 902, transfer denied Dec., 1973.

It is axiomatic that:

"The Court on review will look only to that evidence most favorable to the State and all reasonable inferences therefrom which will support a finding of guilty. . . . The conviction will be affirmed if there is sufficient probative evidence from which the trier of fact could reasonably infer guilt beyond a reasonable doubt. . . ." *Warrenburg* v. *State*, *supra*, at p. 436.

In the case at bar the evidence against the appellants establishes more than a mere opportunity to commit the offense charged and the *McAfee* v. *State* test is applicable to this appeal.

Having considered the above cited evidence together with the reasonable inferences to be drawn therefrom we are of the opinion there was sufficient evidence that a reasonable man would reach the same conclusion as did the jury and that the evidence was sufficient to sustain the verdict which was not contrary to law.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 337 N.E.2d 877.