BESSIE FREEMAN BOND *v.* STATE OF INDIANA.

[No. 870S190. Filed August 31, 1971.]

*C. Kent Carter,* of Bloomington, for appellant.

*Theodore L. Sendak,* Attorney General, *William F. Thompson,* Assistant Attorney General, for appellee.

ARTERBURN, C.J.—On December 3, 1968, the appellant, Bessie Freeman Bond, was charged by affidavit in the Monroe Circuit Court with theft under the Offenses Against Property Act, *Burns Ind. Stat. Ann.,* § 10-3030. On November 12, 1969, appellant waived trial by jury. On November 18, 1969, appellant was found guilty by the court. On January 12, 1970, the court entered the following judgment.

> "The Court having heretofore found the defendant guilty of theft of property not from the person, of less than $100 in value, now fixes for her punishment that she be fined in the sum of $50. and the cost of this action and that she be sentenced to the Superintendent of the Correctional Department of the Indiana State Women's Prison for a period of one (1) year from this date."

Appellant's only contention of error is that evidence was insufficient to support her conviction which rests solely on circumstantial evidence.

We must look to the evidence set forth in the record of the instant case to determine whether it is of such probative value that a reasonable inference of each element of the offense of "Theft," as set forth in *Burns Ind. Stat. Ann.*, § 10-3030, could have been drawn by the trial judge. *Burns Ind. Stat. Ann.*, § 10-3030, defines "Theft" as follows:

> "Theft in general.—A person commits theft when he (1) knowingly:
> (a) obtains or exerts unauthorized control over property of the owner; or
> (b) obtains by deception control over property of the owner or a signature to any written instrument; or
> (c) obtains by threat control over property of the owner or a signature of any written instrument; or
> (d) obtains control over stolen property knowing the property to have been stolen by another, wherever the theft may have occurred; or
> (e) brings into this state property over which he has obtained control by theft, wherever the theft may have occurred; and
> (2) either:
> (a) intends to deprive the owner permanently of the use or benefit of the property; or
> (b) uses, conceals or abandons the property in such manner as knowingly to deprive the owner permanently of such use or benefit; or
> (c) uses, conceals, or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit." [Acts 1963 (Spec. Sess.), ch. 10, § 3, p. 10.]

The two essential elements necessary to prove that the appellant committed the offense of "Theft" in the instant case are: (1) that she obtained or exerted unauthorized control over the property of another, and (2) that she did so with the intent to permanently deprive the owner of such property. Regarding the element of obtaining or exerting unauthorized control

over the property of another, the record discloses the following evidence. On November 29, 1968, Robert Witherall, Manager of Whiteside's Clothing Store, in Bloomington, Indiana, observed his sales personnel discussing a certain "pigskin" dress with a "good" customer. Mr. Witherall then observed the customer leave the store to go next door to get something to eat and think about purchasing the dress, which was valued at from seventy-five [$75.00] to one hundred [$100.00] dollars. Shortly thereafter, three Negro women came in the store together. One of the three ladies engaged two of the three sales personnel in a conversation, in the rear portion of the store. The other two women remained in the front portion of the store, where only one of the sales personnel remained. There is no evidence as to where the appellant was at the time in the store. The women did not purchase anything while in the store and were seen leaving by Mr. Witherall. Immediately after the three Negro women had left the store, the woman who had been interested in purchasing the "pigskin" dress, returned to purchase it. It was then discovered that the dress was no longer in the store. Mr. Witherall testified that he was in the store constantly and that no other customers, other than the three Negro women, were in the store after the customer interested in the "pigskin" dress had left to think over the purchase and before her return to purchase the dress. Having learned of the disappearance of the dress, Mr. Witherall called the Bloomington Police informing them of the circumstances preceding the disappearance. Mr. Witherall then sent a store employee to look for the three Negro women. Soon thereafter, the employee called from a nearby store, reporting that he had found the three women. Mr. Witherall then called the police informing them of where the suspected women were. Mr. Witherall then went to the nearby store, where the employee informed him that the women were. Parked next to the store was a Chevrolet automobile, which Mr. Witherall observed before entering the store. In the rear seat of the car Mr. Witherall observed a "pigskin" dress identical to the

one missing from the Whiteside's store. Mr. Witherall joined the store employee and police inside the store, where they watched the three women. One of the three womn, the appellant, bought a pair of shoes, and the women then left the store. Mr. Witherall had informed the police of observing the dress in the car and described the car to them. While the women, police officers, Mr. Witherall and the Whiteside's employee were inside the store, other police officers arrived and observed the Chevrolet with the dress in the rear seat. These officers approached the car and the Negro male driver rolled up the windows and locked the doors. These plain-clothed police officers identified themselves and told the man to open the door, which he did. The officers then placed the man under arrest. After placing the man under arrest, the officers observed the three women approaching the car, followed by the other police officers, Mr. Witherall and the Whiteside's employee. As they reached the car, the police officers stopped the women and placed them under arrest. While waiting for assistance to come to take the arrested man and women to police headquarters, one of the women, not the appellant, jumped in the car and attempted to leave. After the arrest, the women's purses were searched and many price tags and similar tags were found in each of the women's purses. These tags were all put in the same container and not designated as to which of the women's purses they had come from, for this reason the tags were not admitted into evidence. At trial, Mr. Witherall identified the dress taken from the car as being the property of Whiteside's store and the appellant as being one of the three women who had been in the store. The appellant testified in part that she was with the other two women in the Whiteside's store and that they were on a trip to Indianapolis, to check on an automobile being repaired in Bloomington, when they had decided to do some shopping. From the foregoing, it is undisputed that one of the three women took and carried the "pigskin" dress from the Whiteside's store.

Up to this point the evidence fails to identify the appellant

as to any particular activity, except her presence in the car with the women at the shopping center and her presence in the store with two other companions when the dress disappeared. In our opinion there is a failure to identify the appellant with any specific act of taking of the property charged, mere presence at the scene of a crime without any evidence of participation therein is not sufficient to make one an accomplice. *Guetling* v. *State* (1927), 198 Ind. 718, 153 N. E. 765. *Carey* v. *State* (1924), 194 Ind. 626, 144 N. E. 22.

From the evidence here no one can determine which of the three women took the coat or the dress found missing although circumstantial evidence points to one of the three but the triers of the fact have no right to pick one out of the group and hold such person guilty without some specific evidence pointing to the guilt of that particular individual.

It is urged by the State that there is circumstantial evidence to hold the appellant as an accomplice to a felony. However, the only evidence is that she came in the same car with the two other women. There is no evidence that she had any knowledge of the objective or purpose of the trip, if it were for theft. The most that can be said is that the police found some price tags in each woman's purse but the store manager testified, however, that the price tag was still on the dress that was the subject of the charge in the case.

For the reasons stated we find the evidence insufficient in identifying this appellant as participating in taking the dress.

The judgment of the trial court is reversed with direction to grant a new trial.

DeBruler, Prentice, Givan, JJ., concur; Hunter, J., concurs in result.

NOTE.—Reported in 272 N. E. 2d 460.