Norman WOODS, Appellant,

v.

STATE of Indiana, Appellee.

No. 782S280.

Supreme Court of Indiana.

Dec. 2, 1983.

David M. Shaw, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Stephan E. Wolter, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant Woods was convicted in a trial by jury of theft and was sentenced to thirty-two years at the Indiana Department of Corrections. The enhanced sentence was founded upon a verdict that he was an habitual criminal. He appeals contending that the court committed error in instructing the jury and in overruling his motion to dismiss the habitual offender allegations.

Appellant · was charged with the theft of a car from a car sales company. Indiana Code § 35–43–4–2 defines theft as follows:

"(a) A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a class D felony."

The jury was properly instructed that there are four elements to theft, namely that the defendant:

1. knowingly or intentionally
2. exerted unauthorized control
3. over property of another person
4. with intent to deprive the other person of any part of its value or use.

The information in this case alleged: "that Norman Woods on or about the 18th day of April A.D., 1979 . . . did knowingly exert unauthorized control over property in the custody of Bennett Motors, Inc., to-wit: one 1978 Chrysler Cordova . . . with intent to deprive Bennett Motors, Inc., of the value and use thereof, by obtaining said vehicle by promising Donald Gaines, an agent of Bennett Motors, Inc., that he would bring to the business premises of Bennett Motors, Inc., on April 19, 1979, a cashier's check in the amount of $6,214.00, or that he would deposit on April 10, 1979, $6,214.00 in checking account number 1–222–0488–340–005–611 of the Security Pacific National Bank, which acts the said Norman Woods knew would not be performed, all in violation of I.C. 35–43–4–2."

Indiana Code § 35–43–4–1 provides definitions applicable to the charge made.

"(a) As used in this chapter, 'exert control over property' means to obtain . . . drive . . . or possess property. . . .

(b) Under this chapter, a person's control over property of another person is 'unauthorized' if it is exerted:

\*       \*       \*       \*       \*       \*

(6) by promising performance that the person knows will not be performed. . . ."

The facts tending to support the verdict show that appellant procured overnight use of a car from a car salesman at a lot, upon delivering a check for the purchase price on an account in a California bank and upon his promise to return and deposit the purchase price in the account or deliver a cashier's check, the next day. He told the salesman that there was no money in the account at the time. The account was in fact closed and therefore no longer in existence. This final flurry of activity came at the culmination of the dealings which had included such maneuvers as the creation by appellant of the false impression that his girlfriend was his wife. The day following the delivery of the check, he packed his bags and made an unannounced departure from town with the car.

I.

Over appellant's objection the trial court gave the following Jury Instruction 5 quoting from Ind.Code § 35–43–4–4(e):

"A statute provides in part as follows:

A person who has insufficient funds in or no account with a drawee bank who makes, draws, or utters a check, draft, or

order for payment on the bank may be inferred:

(1) To have known that the bank would refuse payment upon presentment in the usual course of business; and

(2) To have intended to deprive the owner of any property acquired by making, drawing, or uttering the check, draft, or order for payment of (any) part of the value of that property."

Appellant contends that this instruction was not applicable to the facts of this case, since (1) he was not charged with obtaining property by means of a bad check, but by virtue of a promise to pay at a later date, and (2) he had disclosed to the salesman that the check was then worthless. He regards the instruction as having informed the jury that it could infer from the making and use of the bad check that he had not intended to keep his promise to pay for the car the next day. We believe the members of the jury would have received this instruction as informing them that it was open to them to infer two things, first that a person who writes a bad check knows that it is bad, and second that a person who obtains property by tendering a bad check "intends to deprive" the owner of that property. This instruction and the statute it is quoted from deal with the evidentiary use reasonably to be made of the act of writing out and using checks written while insufficient funds exist in an account to pay the amount ordered or when no account exists. This instruction does not, as contended, carry a message to the jury that it could infer appellant knew at the time he wrote this check, and gave it to the car salesman, that his simultaneous promise to deposit funds the next day or deliver a cashier's check would not be carried out. The objection to the instruction was properly overruled.

## II.

Appellant filed a motion to dismiss alleging in part that the habitual offender allegation was defective "because it does not set forth the dates the defendant was discharged from probation, imprisonment or parole for the last prior unrelated felony conviction." The motion was denied.

Indiana Code § 35–50–2–8(e) provides as follows:

"The court shall sentence a person found to be an habitual criminal to an additional fixed term of thirty (30) years imprisonment imposed under section 3, 4, 5, 6, or 7 of this chapter. If the court finds that ten (10) years or more have elapsed between the date the person was discharged from probation, imprisonment, or parole (whichever is later) for the last prior unrelated felony conviction and the date he committed the felony for which he is being sentenced as an habitual offender, then the court may subtract up to twenty-five (25) years from the additional fixed term of thirty (30) years."

It is appellant's contention that this statute requires the prosecution to plead and prove at the habitual offender stage of the trial the date he was released from prison, parole or probation on the last prior felony conviction in order to effectuate its provisions. To the contrary this Court has held that the burden of the State in proving the status of habitual criminal is met solely by proof of convictions and sentences. *Spivey v. State,* (1982) Ind., 436 N.E.2d 61. As we read the above statute, the question of whether a person found to be a habitual criminal is entitled to the ameliorative treatment provided in it, is for the sentencing court and not the trier of the fact of prior unrelated felony convictions. There was therefore no error in overruling the motion to dismiss the habitual offender count on this basis.

The conviction is affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.