Kimberly A. PENNINGTON,
Appellant-Defendant,

v.

STATE of Indiana, Appellee-Plaintiff.

No. 4–683A196.

Court of Appeals of Indiana,
Fourth District.

Feb. 16, 1984.

Rehearing Denied March 14, 1984.

Frederick F. Frosch, Frosch & Frosch, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Presiding Judge.

Kimberly A. Pennington (Pennington) appeals the Marion Municipal Court's judgment finding her guilty of theft, a class D felony.

We reverse.

ISSUES

This case presents a single issue, namely, whether the evidence at trial was sufficient to support the court's judgment.

FACTS

Pennington entered a Radio Shack store in Indianapolis carrying an 8-track car stereo unit, followed shortly thereafter by Daniel Biggers, her co-defendant brother (brother). She inquired of the only clerk in the store whether Radio Shack could repair the stereo, and was told it could not since it was not a brand the store carried. He told Pennington, however, where she could have the unit repaired. Pennington then asked the clerk to look up the other store's phone number and followed him to the office in the rear of the store. As he looked up the requested information, Pennington stood in the doorway of the office blocking the clerk's view of the store, moving as he moved so as to continue obstructing his view of the store.

The clerk heard a "thud", stood on his tiptoes, and looked over Pennington. He saw her brother remove one of Radio Shack's car stereo units from a store display, and run out the front door. Pennington then left also, but went in the opposite direction from the one her brother had taken.

Radio Shack's store manager was in the store adjoining the Radio Shack premises on the left. Looking out the window he saw Pennington's brother walking fast toward the parking lot with an object concealed beneath his shirt. When he took it out and began running toward a van parked in the lot, the manager recognized the object as a car stereo. He saw Pennington's brother put the object into the van. When the manager went to the Radio Shack premises, the clerk told him the brother had not paid for the car stereo. They both went to the van and saw Pennington's brother. He appeared to be disoriented and claimed to have lost some money. At that time both men looked through the van's window and saw the stolen car stereo in a box behind the driver's seat. The brother left but neither man followed him since they knew the location of the radio. They took the van's license number, then the manager told the clerk to watch the van while he called the police. After the manager left, Pennington approached the van. The clerk told her of the situation and requested twice she stay until the police arrived. Pennington ignored the clerk, got into the van, and drove away.

When the police arrived, a radio check of the vehicle registration records revealed the van was owned by Pennington's husband. The police took the Radio Shack manager to the address stated on the registration. He identified the van as the one which had contained the stolen Radio Shack car stereo unit. Although the stolen 8-

track unit was no longer in the van, an antennae lead identical to the one connected to it in the store was found next to the van.

## DISCUSSION AND DECISION

■ A recent case discussed our standard of review when a sufficiency of the evidence question is raised:

> Upon a review for sufficient evidence this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. *Baum v. State*, (1976) 264 Ind. 421, 345 N.E.2d 831. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses, *Rosell v. State*, (1976) 265 Ind. 173, 352 N.E.2d 750.

*Loyd v. State*, (1980) 272 Ind. 404, 398 N.E.2d 1260. Conversely, "if the evidence is such that no reasonable person could infer the defendant's guilt beyond a reasonable doubt, the conviction must be reversed." *Freeman v. State* (1984) Ind. App., 458 N.E.2d 694; *Cain v. State*, (1983) Ind.App., 451 N.E.2d 672, 673. Mere suspicion Pennington was a participant or had an opportunity to commit the crime is insufficient. There must be substantial evidence of probative value upon each element of the crime for affirmance on appeal. *Freeman, supra*, 458 N.E.2d at 695–696; *Manlove v. State*, (1968) 250 Ind. 70, 83–84, 232 N.E.2d 874, 882–83.

■ While there was no question Pennington's brother was guilty of theft,[1] the issue here is whether Pennington was a participant in the crime or merely an innocent bystander.[2]

Only three points in the evidence remotely connect Pennington to her brother's theft of the car stereo:

1. she and her brother were related,
2. she was present in the store when her brother stole it, and
3. she drove away in the van after the clerk had twice requested she wait for the police to arrive.

Pennington argues such proof is insufficient to support her conviction for theft under either sections (a) or (b) of the theft statute.

■ The elements of theft are:
1. knowingly or intentionally
2. exerting unauthorized control
3. over property of another person
4. with intent to deprive the other person of any part of its value or use.

*Woods v. State*, (1983) Ind., 456 N.E.2d 417; *Williams v. State*, (1969) 253 Ind. 316, 253 N.E.2d 242; *Nelson v. State*, (1975) 167 Ind.App. 59, 337 N.E.2d 877. As to the offense of receiving, retaining or disposing of stolen goods, guilty knowledge on the part of the defendant is the gravamen of the offense. *Johnson v. State*, (1982) Ind. App., 441 N.E.2d 1015; *Mattingly v. State*, (1981) Ind.App., 421 N.E.2d 18; *Fletcher v. State*, (1961) 241 Ind. 409, 172 N.E.2d 853.

As to what transpired at the store's office, the clerk testified:

---

1. IND.CODE 35–43–4–2 defines Theft as:
    (a) A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony.
    (b) A person who knowingly or intentionally receives, retains, or disposes of the property of another person that has been the subject of theft commits receiving stolen property, a Class D felony.

2. The State's brief cites us *Loyd v. State, supra*, as to the standard of review in sufficiency cases,

and quotes IC 35–43–4–2 verbatim in its argument on this issue. However, its argument contains no other citation of authority, only a rehash of the facts with a suggestion we affirm on appeal. This is wholly insufficient argument. The State's position on this issue is waived on appeal for that reason. *Hurley v. State*, (1983) Ind., 446 N.E.2d 1326; *Baker v. State*, (1982) Ind., 439 N.E.2d 1346; *Hobbs v. State*, (1983) Ind.App., 451 N.E.2d 356; Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). Thus, if Pennington's brief states a prima facie case for reversal, we must do so.

Q. What did you do when you got back to Mr. Sexton's office?

A. I pulled out the Yellow Pages and began to look up the number for her. I was trying to keep an eye on the sales floor but she was blocking my view. I tried to look around her but she was moving back and forth in the doorway blocking my view.

Q. Did you observe Mr. Biggers anymore?

A. Well I heard a noise, a loud thud and I had to kind of (sic) up on my toes over her shoulder. It was at that point that I saw him remove a car stereo from our display.

Mere presence at the scene of the crime does not in and of itself raise the inference Pennington was a participant, *Byrer v. State*, (1981) Ind.App., 423 N.E.2d 704, 706; *Fox v. State*, (1979) 179 Ind.App. 267, 384 N.E.2d 1159, 1165; *Anderson v. State*, (1973) 156 Ind.App. 265, 295 N.E.2d 832, 833–34; *Bond v. State*, (1971) 257 Ind. 95, 272 N.E.2d 460, 463. No reasonable inference arises from this testimony Pennington was *intentionally* blocking the clerk's view of the store so that her brother could steal the 8-track car stereo set, and no other evidence in the record supports that proposition.

Next, it is undisputed Pennington did not exert unauthorized control over the stolen stereo either while it was in the store or while her brother was carrying it to the van. She left the store after her brother departed and turned in the opposite direction. She went to a drug store in the mall to talk to a friend rather than to the van to assist in her brother's getaway.

Nor did she *knowingly* either exert unauthorized control, retain, or dispose of the stereo set by driving off with it in the van. As to that incident, the clerk testified:

Q. Did you testify that you actually saw the radio in the van?

A. Yes we did. We saw it behind the driver's seat in a cardboard box.

Q. Did you see, after you had seen the radio in the van, did you see the defendant, Kimberly Pennington any more?

A. Yes I did after Mr. Sexton went back into the store to phone the police she shortly came out of the Super X drug store and walked over to the van. I then asked her to remain. I told her what happened briefly and I asked her to remain until the police arrived.

Q. Was the radio still visible?

A. Yes I could still see it.

Q. Did you try to *show it* to her *or anything?*

A. *No* I just told her *what had originally happened.*

Q. What was the defendant, Pennington's response?

A. She almost ignored me and then she jumped into the van. I didn't try to physically stop her. I again asked her to please remain until the police got there but she took off.

Q. Was Biggers with her at the time?

A. No we didn't see him.

Q. So she didn't wait for him to come?

A. No she headed south on 31. (Emphasis supplied.)

On cross-examination Pennington testified:

Q. Were you asked to remain by Mr. Sexton or Mr. Smith because they believed there was a stolen stereo in your van? Did they?

A. No.

Q. They never told you that?

A. No sir.

Q. They never even said that to you?

A. No they did not.

Q. Were they out at the van?

A. No they were not.

Q. They were in the store. They never came out of the store?

A. I seen one guy period. I didn't even see the other guy.

Nothing in the record disputes this testimony, directly or by way of reasonable inference.

■ Although on appeal we neither weigh conflicting evidence nor determine the credibility of witnesses, uncontradicted statements of fact in behalf of an appellant will be taken as true. *Morgan v. State,* (1980) 272 Ind. 504, 400 N.E.2d 111, 113; *Whitt v. State,* (1977) 266 Ind. 211, 218, 361 N.E.2d 913, 917–18; *Winn v. State,* (1953) 232 Ind. 70, 111 N.E.2d 653, 654. Thus, we must accept as true the fact Pennington was not told the stolen car stereo was in the van behind the driver's seat.

■ The State at trial failed to prove an essential element of each offense since there was no substantial evidence Pennington (a) knowingly or intentionally exerted unauthorized control over the stereo unit, or (b) knowingly or intentionally retained possession of it as she drove off in the van.

Reversed with instructions to the trial court to enter judgment for defendant.

MILLER and YOUNG, JJ., concur.