Arlena Vivian SCRUGGS, Appellant (Defendant Below),

v.

STATE of Indiana Appellee (Plaintiff Below).

No. 4–1084A282.

Court of Appeals of Indiana, Fourth District.

April 1, 1985.

Jack E. Roebel, Allen County Public Defender, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Michael B. Murphy, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Presiding Judge.

Arlena Vivian Scruggs, defendant-appellant, appeals her conviction for theft, a class D felony, IND.CODE 35–43–4–2(a) (1982), resulting from her actions in concert with a department store cashier who allowed certain customers to leave the store with merchandise not fully paid for. Arlena alleges the evidence at trial was insufficient to prove beyond a reasonable doubt that she "knowingly or intentionally" committed theft or that she exerted the necessary control over the stolen property, claiming she was an unwitting participant in a scheme planned by her son and the cashier. Arlena also alleges the trial court erred in failing to read the jury her tendered instruction regarding jury deliberations. Finding no reversible error, we affirm the trial court.

■ Our standard for reviewing an alleged insufficiency of evidence holds that we do not weigh evidence or judge credibility of witnesses, but that we consider only the evidence most favorable to the state, including the reasonable, logical inferences that may be drawn from that evidence. We will not disturb the verdict if there is substantial evidence of probative value to support the finding of the trier of fact on each element of the offense charged. *Rowan v. State* (1982), Ind., 431 N.E.2d 805. The trier of fact may draw reasonable inferences from facts established by either direct or circumstantial evidence, and circumstantial evidence may, by itself, be sufficient to support a verdict of guilty. *Id.; Harris v. State* (1981), Ind., 425 N.E.2d 112.

The evidence most favorable to the state showed that, on September 28, 1983, Arlena entered a Target department store with her nineteen-year-old son, David. Arlena helped David choose some items of women's and children's clothing and some toys, all of which were placed in a shopping cart. Arlena also selected some household goods and other items and placed them in the cart. Arlena and her son pushed their cart into a checkout lane where Anita Middleton, an acquaintance of David's, was working as a cashier. While Arlena waited in line, David left the checkout lane and soon returned with a portable stereo and stereo power booster, which he placed in the shopping cart. Arlena asked her son how he was going to pay for all the items he had selected, and David told her not to worry about it, because he and Anita would take care of it. When they got to the front of the line, David went to another checkout lane and purchased a candy bar.

At the time Arlena went through the checkout lane, Anita Middleton was under the scrutinizing surveillance of the Target store's vigilant loss prevention manager, Carol Bates. Bates suspected Middleton of undercharging friends for merchandise by ringing on the cash register a price lower than the actual price of the goods being taken. Thus, to the casual observer, it would appear that a normal transaction was taking place, in which the customer would present the merchandise, Middleton would ring it up (though actually at a reduced price), and the customer would pay for it. Middleton had agreed to undercharge David Scruggs for merchandise in this way if he would get some things for her. Carol Bates, however, was no casual observer; she was on to Middleton's scheme like white on rice. By means of a remote monitoring system in her office, including a video camera trained on Middleton's checkout lane and a machine that printed out everything rung into Middleton's cash register, Bates was able to observe the actual items Arlena presented for purchase and the inventory control identification number and price that Middleton entered on the cash register for those

items. Thus, from her office, Bates was able to observe, for example, that for several articles of clothing, Arlena was charged for candy bars, and, for other items, she was not charged at all.

Back in the checkout lane, Arlena helped Middleton remove merchandise from the shopping cart, place it on the checkout counter and, after it was (or was not) rung on the cash register, place it in shopping bags and then back into the cart. For merchandise priced at over $700, Middleton charged Arlena $38.81, which Arlena apparently paid. As Arlena pushed the cart away from the checkout lane and toward the front doors, her son reappeared to remove the portable stereo and power booster from the cart.

Arlena and her son had exited the first of two sets of front doors when a security officer, hired and alerted by the foresightful Bates, stopped them and asked to see their receipt. Arlena refused to produce the receipt, claiming she had paid for the merchandise and was going to take it with her. When the security officer repeated his request, Arlena removed the receipt from her wallet, stuffed it inside her blouse and again stated she had paid for the merchandise. The security officer told Arlena he knew how much the receipt was for and would refund that amount to her if she gave him the receipt. To this, Arlena agreed, and all concerned retired to Carol Bates' loss prevention surveillance headquarters to discuss the matter with sheriff's officers who had been called to the scene.

Arlena was charged with and convicted of theft, a class D felony under IND.CODE 35–43–4–2(a).[1] A person commits theft who: (1) knowingly or intentionally (2) exerts unauthorized control (3) over the property of another person (4) with intent to deprive the other person of any part of the value or use of the property. *Woods v. State* (1983), Ind., 456 N.E.2d 417. Arlena alleges the evidence at trial was insufficient to support a finding that she acted knowingly or intentionally, or that she had control of the property of another. She claims she was an innocent and unwitting bystander to a crime planned and carried out by her son and Anita Middleton.

▪ A person acts "knowingly" when, at the time he acts, he is aware of a high probability that he is doing so. IC 35–41–2–2(b). From the evidence recited above, the jury reasonably could have inferred that, at the time Arlena pushed the cart of merchandise priced at over $700 away from the checkout lane, having paid Middleton just $38.81 for the goods, Arlena was aware of a high probability that she was carrying away the property of the Target store without having paid the full price for the property and, therefore, without consent. The jury also reasonably could have inferred that Arlena was carrying the property away by creating the false impression that it had been paid for in full. Thus, the evidence was sufficient to prove Arlena knowingly exerted unauthorized control over the property of another, and her arguments on this issue must fail.

▪ Arlena also alleges the trial court erred in refusing to read the following tendered instruction to the jury:

"You are instructed that the verdict must represent the considered judgment

1. The relevant portion of the theft statute states:
"Sec. 2. (a) A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony." IC 35–43–4–2(a) (1982). Relevant portions of the definitional section of the theft statute are as follows:
"Sec. 1. (a) As used in this chapter, 'exert control over property' means to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property.
(b) Under this chapter, a person's control over property of another person is 'unauthorized' if it is exerted:
(1) without the other person's consent;
(2) in a manner or to an extent other than that to which the other person has consented;
. . . .
(4) by creating or confirming a false impression in the other person; . . . ."
*Id.* § 1.

of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced that it is erroneous. But do not surrender your honest conviction as to the weight or effective [sic] evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict. You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in this case."

(R. 4) This instruction was taken verbatim from *Lewis v. State* (1981), Ind., 424 N.E.2d 107, 111, where our supreme court stated:

"We recognize that the above language is an instruction on jury deliberations commonly used in Indiana courts as a final instruction. It is a sound instruction informing the jury of their duties and the manner in which they are to deliberate and arrive at a verdict. We recommend that this instruction be given to the jury in all trials."

We know of no case, and Arlena cites none, in which our supreme court has agreed with her interpretation of this recommendation as an "implicit mandate" that the trial court give this instruction at every jury trial on the pain of reversal for failure to do so. In light of the discretion with which a trial court is vested regarding instruction of the jury, *Buttram v. State* (1978), 269 Ind. 598, 382 N.E.2d 166, we decline to hold it reversible error *per se* for the trial court to refuse the above instruction. Moreover, because the essence of the instruction was included in the trial court's Final Instruction Number 10,[2] which was read to the jury, we fail to see how Arlena could have been harmed by the trial court's refusal to give her tendered instruction.

Affirmed.

CONOVER and YOUNG, JJ., concur.

---

**2.** The relevant portion of the court's Final Instruction Number 10 stated:

"Your verdict must represent the considered judgment of each juror. In order to return a verdict of guilt or innocence you must all agree.

During your deliberations you should not yield your individual judgment to your fellow jurors just so you can return a verdict. However, it is your duty to impartially consider the evidence with your fellow jurors, to examine your own views in light of the discussions, and to consult and reason with your fellow jurors in a good faith effort to reach a just verdict."
(R. 44)