**Kevin McMAHEL, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 13A04–9112–CR–403.**

Court of Appeals of Indiana, Fourth District.

March 9, 1993.

---

Eugene C. Hollander, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Kevin McMahel claims his conviction for Burglary, a class C felony, and Theft, a class D felony, were not supported by the evidence. We agree and reverse.

### FACTS

The facts most favorable to the judgment are that on the night of August 31 and early morning hours of September 1, 1990, Christine Epperson was the bartender at the Green Lantern Tavern in English, Indiana. Epperson testified that McMahel, Todd Gray, and Kim Angle had been at the Green Lantern at various times throughout the evening of August 31, 1990 and morning of September 1, 1990: Gray had been drinking in the bar from approximately 9:00 p.m. to 10:00 p.m., during which time he also was seen talking with Angle; McMahel came in later that evening, and he and Angle were the last patrons to leave the bar when it closed at 1:09 a.m. At 1:15 a.m., Epperson locked the doors and left to take the night's receipts to the bar's owner, Mrs. Melton. When Epperson left, she saw McMahel, Angle, and Mike Rickenbaugh sitting on a ledge by the front door of the bar. Epperson then drove to Melton's home and dropped off the receipts. At approximately 1:30 a.m., Epperson drove back by the bar on her way home and noticed McMahel, Angle, and Rickenbaugh still sitting outside.

Half an hour later, at approximately 2:00 a.m., Crawford County Sheriff Deputy Donald Roberts was driving north on Highway 37 approaching English. As he entered the town, Roberts observed a group of three or four people cross the highway and then proceed through some bushes on the other side of the highway. This point was only a short distance away from where McMahel lived with his parents. Roberts testified that it was too dark to identify any of the individuals, or to verify how many people there actually were. He did state that it appeared that they were carrying an object about the size of a case of beer.

Roberts apparently thought nothing of what he had just seen and continued on his

normal patrol, arriving at the town jail. Roberts stayed at the jail for approximately ten minutes, when, becoming suspicious, he decided to drive back to where he had seen the individuals crossing the highway. As he neared the scene, he noticed that the security light above the back door of the tavern was out. He approached the bar and saw that the back door had been forced open. Roberts radioed for assistance from Indiana State Police Officer Philip Stowers and Town Marshall Bob Harmon. Harmon called Melton to come down and determine what, if anything, had been taken. According to Melton, three (3) cases of Budweiser Light, one (1) case of Miller Lite, two (2) pints and two (2) half-pints of Jack Daniels whiskey were missing.

Meanwhile, sixteen year-old Hope Raines (Raines) had been at McMahel's parents' house waiting for McMahel to return. At about 2:00 a.m., Raines stepped outside and saw McMahel, Angle, and Rickenbaugh approaching the house. She also testified that she saw a yellow Gremlin belonging to Gray driving away; however, she was not able to identify the driver or other occupants of the car. As McMahel, Angle and Rickenbaugh approached, Raines saw Rickenbaugh carrying a case of Budweiser beer, and Angle carrying two cans of Budweiser and two bottles of whiskey. Raines testified that McMahel was not carrying anything.[1]

Based on the above, McMahel and Gray were charged with Burglary and Theft. Following their joint jury trial, Gray was acquitted on both counts; McMahel was convicted on both counts and sentenced to eight years, six years executed, the last two years of the executed sentence to be served at an alternative sentencing program (a drug and alcohol treatment center), and two years suspended with probation.

### DECISION

■ McMahel challenges the sufficiency of the evidence. When reviewing such a challenge, we will neither weigh the evidence nor judge the credibility of the witnesses. *Burkes v. State* (1983), Ind., 445 N.E.2d 983, 986, and we will consider only the evidence favorable to the judgment, together with all reasonable inferences flowing therefrom. *Id.* at 986–987. If there is substantive evidence of probative value to support the judgment, it will not be disturbed. *Id.* But we hasten to add that, even though greatly limited in our scope of review, we must still determine whether a reasonable trier of fact could conclude that the defendant was guilty *beyond a reasonable doubt. See, Justice v. State* (1988), Ind., 530 N.E.2d 295, 296; *Manlove v. State* (1968), 250 Ind. 70, 232 N.E.2d 874, 881–82.

■ Burglary requires proof of a breaking and entering of the building or structure of another person, with the intent to commit a felony, Ind.Code 35–43–2–1—which in this case would be the theft of beer and whiskey from the bar. To prove theft, the State must show that a person either individually or in concert with another has exercised unauthorized control over the property of someone with the intent to deprive the owner of its use or value. I.C. 35–43–4–2. Here, the State argues that because McMahel was seen at the bar close to the time of the burglary, and that afterwards he was seen walking towards his house with Angle and Rickenbaugh—who were both in possession of beer and whiskey—that there was sufficient circumstantial evidence from which the jury could have reasonably concluded that McMahel at least aided and abetted in the commission of the burglary and theft, and should therefore be convicted as a principal. We disagree.

Our courts have reversed, on insufficiency grounds, convictions that were based merely upon the defendant being in the "right place at the wrong time." For ex-

---

**1.** Moreover, the State put forth no evidence showing that the beer and whiskey stolen from the Green Lantern bar were ever found, or that the same were in Rickenbaugh and Angle's possession. Apparently, the State, relying on Raines' testimony that she saw Rickenbaugh carrying a case of Budweiser, adopted the position that "when you say Budweiser, you've said it all."

ample, in *Janigon v. State* (1982), Ind., 429 N.E.2d 959, our supreme court reversed a defendant's conviction as a participant in a robbery where the evidence most favorable to the State consisted of: (1) one witness's testimony that the defendant was seen in the drug store before it was robbed; (2) the testimony of a police officer that the defendant was seen afterwards walking in a nearby neighborhood; and (3) a search of the defendant revealed that he had in his possession bills of the same denominations as those taken from the drug store. Our supreme court found this evidence insufficient to support a finding of guilt beyond a reasonable doubt, stating that "[m]ere presence at the scene of crime is of itself not sufficient to sustain a conviction for participation." *Id.* at 960. Of particular importance to the court was the fact that "only one of the State's witnesses could testify to the appellant's presence at the store without any indication of participation." *Id.*

In *Bond v. State* (1971), 257 Ind. 95, 272 N.E.2d 460, the court reversed a defendant's conviction as an accomplice to theft based upon insufficient evidence. There, the defendant and two other women were seen in a clothing store; after they left, the store owner noticed that a certain dress was missing. The store owner notified the police and proceeded to track down the three women. Finding them in a nearby store, he also saw parked next to the store a car which had the missing dress in the back seat. After the defendant made a purchase in the store, she and the other women approached the car. As they reached the car, the defendant and the other women were placed under arrest. While it was undisputed that one of the women had taken the dress, our supreme court concluded that "there [was] a failure to identify the appellant with any specific act of taking of the property charged[;]

mere presence at the scene of a crime without any evidence of participation therein is not sufficient to make one an accomplice." 272 N.E.2d at 463.

Also, in *Freeman v. State* (1984), Ind. App., 458 N.E.2d 694, this court reversed a defendant's conviction as an accomplice to burglary and theft where the evidence most favorable to the State was simply that the defendant had an opportunity to commit the crimes. In *Freeman*, two men were seen jumping from a retaining wall behind the victim's house. At that point, the defendant, who was approaching them on the same sidewalk, joined them and the three then walked together towards the place where an officer was interviewing the victim. We found this evidence insufficient and stated that "[w]hile Freeman's presence near the time of the burglary may be a suspicious circumstance, it does not constitute substantial evidence he participated in the burglary." *Id.* at 696.

Here too, the State's evidence is based solely on McMahel's "opportunity" to commit the burglary and theft at the Green Lantern Bar. There was no evidence that McMahel had "kept watch" or rendered any other assistance while someone else broke into the bar. Neither was there any evidence showing that McMahel was aware of the illegal activities or that he gave his assent to them. Furthermore, there was no evidence that McMahel took or had in his possession any of the stolen beer or whiskey. By relying solely on evidence of McMahels' opportunity to commit the crimes charged, the State's case was, at best, an exercise in conjecture and speculation—which cannot rise to a level sufficient to support a jury determination that he was guilty beyond a reasonable doubt. Therefore, we reverse both the burglary and theft convictions.[2]

---

2. The dissent argues that our analysis has overlooked the maxim that "circumstantial evidence alone is sufficient" to sustain a conviction, dissenting opinion at 2 (citing *Rains v. State* (1988), Ind., 519 N.E.2d 523, 524), and then concludes that "[t]he circumstantial evidence presented by the State ... provided a sufficient basis from which the jury could infer that

McMahel was a participant in the burglary and theft of the tavern." *Id.* We agree with the dissent that the evidence relied upon by the State was circumstantial (*e.g.*, McMahel's presence at the bar before and after the break-in; McMahel seen in the company of Angle and Rickenbaugh, who had beer and whiskey in their possession), as opposed to direct (testimo-

SHARPNACK, C.J., concurs.

CHEZEM, J., dissents with separate opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent from the majority opinion. I agree with the majority that when reviewing a challenge to the sufficiency of the evidence, we will neither reweigh the evidence nor judge the credibility of witnesses. *Jones v. State* (1992), Ind., 589 N.E.2d 241, 242. I further agree that we will consider the evidence which supports the verdict and the reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value to support the verdict, it will be affirmed. *Id.* However, in considering the evidence which supports the verdict and the reasonable inferences to be drawn therefrom, I cannot agree that the evidence was not sufficient to sustain McMahel's convictions for burglary and theft.

In *Rains v. State* (1988), Ind., 519 N.E.2d 523, 524, our supreme court held that circumstantial evidence alone is sufficient where the reasonable inferences drawn from that evidence support the verdict. The *Rains* court also held that the circumstantial evidence need not exclude every reasonable hypothesis of innocence. *Id.*

The circumstantial evidence presented by the State during McMahel's trial provided a sufficient basis from which the jury could infer that McMahel was a participant in the burglary and theft of the tavern. McMahel was seen sitting outside the tavern at 1:30 a.m. with Angle and Rickenbaugh as the bartender drove home. Approximately thirty minutes later, a deputy sheriff saw three individuals hurriedly walking across state road 37 from Hanger Equipment toward the railroad track and into McMahel's yard. Hanger Equipment is located three or four doors down from the tavern. The deputy sheriff saw one person carrying a box about the size of a case of beer, and then lost sight of the three as they went

through the bushes in McMahel's yard. Hope Raines testified that she had been at McMahel's house during the night of the burglary, and at 2 a.m. she heard people running up to the house. When she went outside, she saw McMahel, Angle and Rickenbaugh. They were laughing and drinking while Angle carried a couple bottles of whiskey and Rickenbaugh carried a case of beer. The bartender also testified that she did not sell any cases of beer or bottles of whiskey to McMahel, Angle or Rickenbaugh on the night of the burglary, and that these were items taken from the tavern. The jury could reasonably infer McMahel's participation in the burglary and theft from his companionship with Angle and Rickenbaugh immediately before and after the time of the break-in, and his drinking with them upon his arrival at the house. It is not dispositive of the case that McMahel did not have any of the stolen beer or whiskey in his possession. The evidence is sufficient to sustain the jury's verdicts.

I would affirm McMahel's convictions for burglary and theft.

ny of McMahel seen entering the bar and removing goods). However, this same type of evidence ("mere presence" or "opportunity") also comprised the sole basis for the defendants' convictions in the cases previously referenced in

our opinion. And as we made clear, our courts have repeatedly reversed criminal convictions based only upon this form of circumstantial evidence.